[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 88 
The defendant was indicted and convicted for the capital offense of nighttime burglary during the course of which the victim is intentionally killed. Alabama Code 1975, Section 13-11-2 (a)(4). Sentence was fixed at death.
 I
This is the first case before this Court to challenge the constitutionality of the death penalty as construed by the Supreme Court of Alabama in Beck v. State, 396 So.2d 645
(1981), following the decision of the Supreme Court of the United States in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382,65 L.Ed.2d 392 (1980). The defendant argues that the procedural changes made by our Supreme Court in the method of sentencing one convicted of a capital offense from those specifically provided by statute constitutes an unconstitutional usurpation of legislative authority and violates the doctrine of separation of powers guaranteed by the constitutions of the United States and the State of Alabama.
This very issue was settled by our supreme court in Beck when it said: "Under the separation of powers doctrine, this Court cannot change the offense, but a change in procedure to comport with constitutional requirements is not impermissible." Beck, 396 So.2d at 662.
This finding is binding upon this court. "The decisions of the supreme court shall govern the holdings and decisions of the courts of appeals." Alabama Code 1975, Section 12-3-16.
Both the Florida and the Texas death penalty statutes survived attacks upon their constitutionality by virtue of judicial interpretation which allowed the consideration of any mitigating circumstance. Lockett v. Ohio, 438 U.S. 586, 606-7,98 S.Ct. 2954, 2965-6, 57 L.Ed.2d 973 (1978). Also, the essential constitutional requirement of appellate review of sentencing was read into the Florida death penalty statute by the Florida Supreme Court even though no specific form of review was provided by statute. Proffitt v. Florida,428 U.S. 242, 250, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976).
Further support for the constitutional validity of the Alabama Supreme Court's curative judicial construction of our capital punishment scheme in Beck, supra, is found in Jacksonv. State, 337 So.2d 1242 (Miss. 1976). In Jackson, the Supreme Court of Mississippi exercised its "inherent power to prescribe rules of procedure" to reconstruct that state's 1974 capital punishment statute to comport with decisions of the United States Supreme Court in 1976.
Despite the extensive "repair work" accomplished in Jackson, the federal courts have not held unconstitutional the action by the Supreme Court of Mississippi despite numerous opportunities to so do. At least one federal district court judge has held that the action of the Supreme Court of Mississippi was constitutionally permissible. Irving v. Hargett, 518 F. Supp. 1127
(N.D.Miss. 1981). The Supreme Court of the United States has denied certiorari in three cases challenging the constitutionality of Mississippi's death penalty statute as modified by the Supreme Court of Mississippi. Jordan v.Mississippi, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114
(1979), declining to review Jordan v. State, 365 So.2d 1198
(Miss. 1979); Irving v. Mississippi, 441 U.S. 913,99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), declining to review Irving v.State, 361 So.2d 1360 (Miss. 1978); Bell v. Mississippi,440 U.S. 950, 99 S.Ct. 1433, 59 L.Ed.2d 640 (1979), declining to review Bell v. State, 360 So.2d 1206 (Miss. 1978). Consequently, we find that the action of the Alabama Supreme Court in Beck, supra, is a constitutional and legitimate exercise of judicial power.
We specifically note that the defendant acknowledges that "(t)he trial and all proceedings *Page 89 
were conducted in accordance with the rulings of the Alabama Supreme Court in Beck v. State, 396 So.2d 645 (1981)." Appellant's Brief, p. 6.
 II
We find no error in the admission of the defendant's confession into evidence.
Even if the investigation had begun to focus on the defendant as he alleges, the evidence fully supports the view that the defendant was not a suspect until he, in being questioned by the police to clear up some discrepancies over his activities on the date of the homicide, "reached a point where he wanted to know what would happen to him if he told it." When the officers indicated that they would need to talk to a district attorney in order to answer that question and told the defendant that they could not promise him anything, the defendant requested to talk to the district attorney. All the testimony indicates that the defendant was free to leave until he made that inquiry.
All questioning ceased when the defendant asked the officers what would happen to him if he did make a statement and did not resume until after the defendant had voluntarily and intelligently waived his rights.
It is custody and not investigative focus or suspicion which marks the point at which the warnings required by Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), become mandatory. Oregon v. Mathiason, 429 U.S. 492,97 S.Ct. 711, 50 L.Ed.2d 714 (1977); Harris v. State, 376 So.2d 773, 774
(Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala. 1979).
 III
Each of the six veniremen who were excused for cause in this case was properly excused because each stated unequivocally that he could not vote for the death penalty under any circumstance or that his opposition to the death penalty would prevent him from impartially deciding guilt, or both. Full compliance was had with Witherspoon v. Illinois, 391 U.S. 510,88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Keller v. State,380 So.2d 926 (Ala.Cr.App. 1979), cert. denied, 380 So.2d 938.
 IV
The defendant raises several issues concerning the handling of various psychiatric matters by the trial court. He contends (A) that he was entitled to hire, at the expense of the state, a private psychiatrist to examine him for the purpose of expert testimony concerning certain mitigating circumstances; (B) that the use of the psychiatric report by the trial judge at the sentencing hearing violated his right to counsel; and (C) that his rights of confrontation and cross examination were violated by the trial court's consideration of two letters concerning the psychiatrist's conclusions about his mental condition.
Because of the nature of this case, the facts relevant to these issues are best set out in detail.
The murder occurred on November 7, 1979. The defendant was arrested on November 14, 1979, and a formal arrest warrant was issued the next day. On November 21, 1979, District Court Judge Jack Montgomery appointed attorney Jim Hard to represent the defendant.
On December 5, 1979, District Court Judge R.W. Gwin entered an order that the "Defendant is to be examined for psychiatric evaluation." On December 7, 1979, pursuant to Judge Gwin's order, the defendant was examined by Dr. Robert Estock. Dr. Estock was a private psychiatrist under contract with Jefferson County to evaluate prisoners where necessary. In a letter dated December 10, 1979, a social worker named Donna Click informed Judge Gwin of Dr. Estock's conclusions. Ms. Click's letter to Judge Gwin reads:
 "On December 7, 1979, at the Jefferson County Jail the above named individual was evaluated by Doctor Robert Estock at your request. Doctor Estock feels this individual is competent to stand trial and aid in his defense. At this time there is no evidence of a psychosis. *Page 90 
Should you have any questions, please do not hesitate to call me."
On February 8, 1980, the defendant was indicted for the capital offense of nighttime burglary during the course of which the victim is intentionally killed. On February 22, 1980, Circuit Judge Wallace Gibson appointed attorney Stephen Arnold to represent the defendant in circuit court.
On February 29, 1980, the defendant was arraigned before Judge Gibson and pleaded not guilty. The record does not reflect entry of a plea of not guilty by reason of insanity. However, the record does show that at the defendant's sentence hearing both the assistant district attorney and defense counsel thought that a plea of not guilty by reason of insanity had been entered. The assistant district attorney thought that such a plea had been entered and withdrawn after the defendant was examined, while the defense attorney did not recall it "ever absolutely being withdrawn." On appeal, there is a strong argument made by the Attorney General that, even assuming that a plea was actually entered and had not been withdrawn, the plea of insanity was abandoned. Defense counsel made no mention of any insanity defense in his opening and closing arguments to the jury. At trial there was no evidence to support such a defense and the defense rested its case, without any defense, immediately after the State rested. Additionally, the defense did not request the court to instruct the jury on the issue of insanity.
On February 29, 1980, the day of arraignment, the defense filed a motion entitled "Defendant's Motion for Psychiatric Examination", which requested the court to empanel a lunacy commission pursuant to Code of Alabama 1975, Section 15-16-22. This motion was granted by Judge Gibson to the extent that he directed the Jefferson County Diagnostic Office "to have a psychiatrist evaluation on defendant's mental condition."
On or about March 10, 1980, the defense filed two more motions relating to the defendant's mental state. The first was a "Motion for Court Appointed Psychiatrist", which requested that the court appoint a psychiatrist "to conduct a clinical evaluation and examination of the defendant's capacity for criminal responsibility." The second was a "Motion for Funds for a Private Psychiatrist", which requested that the court order the State or some subdivision of it to provide the defendant with funds to hire a psychiatrist "to conduct a clinical evaluation of the defendant's capacity for criminal responsibility in order to enable him to have an adequate defense, due process of law and a fair trial."
On March 11, 1980, the parties appeared for a hearing on those two motions. Judge Gibson asked defense counsel why the March 10, 1980, motion for examination by a private psychiatrist was necessary in view of the order the court had entered on February 29, 1980, in response to the first motion — the one to empanel a lunacy commission. Attorney Arnold responded that the February 29, 1980, motion ("the first motion") was to have the defendant evaluated at Bryce Hospital whereas the March 10, 1980, motion ("the second motion") was to have the court appoint a private psychiatrist "to examine him independent of anyone in the State hospital system."
Judge Gibson explained that in granting the first motion on February 29, 1980, he intended to have the defendant examined by a psychiatrist who was under contract with Jefferson County to perform such examinations. The purpose of that examination and evaluation would be to determine if there were sufficient grounds to send the defendant to Bryce Hospital for further psychiatric evaluation. The report from the private psychiatrist under contract with the county was to be back by March 21, 1980, and the court would determine at that time whether to send the defendant on to Bryce Hospital.
Given that explanation, defense attorney Arnold said, "That is fine." He explained that the purpose of his first motion (the one filed on February 29, 1980) was "to get the procedure going", which the court had done. Attorney Arnold explained that he had no problem with what had been done in regard to that first motion, because he *Page 91 
understood that it was the procedure to first determine if cause exists to send an accused to Bryce: "So, I have no quarrel at all." Judge Gibson and attorney Arnold agreed that no action was required on the March 10, 1979, motion ("the second motion") seeking examination by a court-appointed psychiatrist, because that had already been ordered in response to the first motion (the one filed on February 29, 1980).
The court then considered defense counsel Arnold's third psychiatric motion — the March 10, 1980, motion requesting funds to hire a private psychiatrist to examine and evaluate the defendant. Judge Gibson stated that the psychiatrist who would examine the defendant pursuant to the court's February 29, 1980, order was a private psychiatrist, albeit one on contract to Jefferson County to perform such examinations. Attorney Arnold replied that this motion should be considered in conjunction with his motion for a court-appointed psychiatrist, and he asked that a ruling on this motion be made after the psychiatrist on contract with the county had made his evaluation, because "it is the thrust of this, really, for a second opinion."
Judge Gibson questioned whether he had any authority to order funds paid to the defendant to hire a psychiatrist of his own choosing, and finally decided that, "I will just hold this in abeyance, then, and then I will leave it to you, if you think it is necessary, to call it to my attention at some future time." This motion was never mentioned again until after the jury had returned its sentence verdict fixing the defendant's punishment at death, when the defense brought it up on the day of the sentence hearing before the judge.
Thereafter, on March 18, 1980, social worker Donna Click wrote Judge Gibson a letter reporting to him that the defendant "was evaluated by Dr. Robert Estock at your request."
 "Dr. Estock feels this individual is competent to stand trial, and aid in his defense. He displayed no evidence of psychosis and does not meet the criteria for involuntary commitment to Bryce Hospital. Should you have any questions concerning this evaluation, please do not hesitate to call us."
The trial was conducted before Circuit Judge Joseph J. Jasper on February 23, 1981, through February 25, 1981. No evidence of insanity or mental impairment was presented. The only witness called by the defense during the guilt stage was the defendant himself who testified on voir dire concerning the circumstances surrounding his confession. The defense rested its case without putting on any evidence.
On the 25th of February, 1981, the jury returned its verdict convicting the defendant of the capital offense. The sentence hearing before the jury was conducted that same day. No evidence was presented at the sentence hearing before the jury that the defendant had acted "under extreme duress" or that "(t)he capacity of the appellant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired", within the meaning of Code of Alabama 1975, Section 13-11-7 (5) and (6), or that he had any type of mental problem. The defendant took the stand and testified in his own behalf at the sentence hearing before the jury, but none of his testimony indicated any type of mental impairment.
The jury returned its verdict fixing the defendant's punishment at death that same day, February 25, 1981. Judge Jasper scheduled the Section 13-11-4 sentence hearing to be held before him for February 27, 1981.
When the matter was called as scheduled for the sentence hearing before Judge Jasper on February 27, 1981, defense attorney Arnold announced that the defense was not ready, and he moved for a continuance. His stated grounds were that Judge Gibson had deprived the defendant of the right to prove the mental capacity mitigating circumstances (Section 13-11-7 (2) and (6)) by denying his motion for a court-appointed psychiatrist and his motion for funds to hire a private psychiatrist. The defense requested Judge Jasper to grant those two motions and continue the hearing until psychiatric *Page 92 
evaluations could be done to show whether the mental status mitigating circumstances existed.
The State opposed the request for such a continuance and argued that the psychiatric examination or examinations already done on the defendant were sufficient to indicate that there was no basis for further examination.
Judge Jasper denied the request for a continuance. He ruled that Judge Gibson had properly denied the motion for funds to hire a psychiatrist in view of Harris v. State, 352 So.2d 460,475 (Ala.Cr.App. 1976), affirmed, 352 So.2d 479 (Ala. 1977), and Nelson v. State, 405 So.2d 392 (Ala.Cr.App. 1980), reversed on other grounds, 405 So.2d 401 (Ala. 1981). Judge Jasper also ruled that the other matter was adequately covered by the psychiatric examinations and evaluations which had been performed by Dr. Estock at the request of Judge Gwin and Judge Gibson, and he read social worker Donna Click's two letters concerning those examinations into the record. At no point did the defense object to the hearsay nature of the letters or request an opportunity to examine or cross examine Dr. Estock concerning his conclusions which were reported in those letters.
The defense offered no additional evidence on the issue of sentencing at this hearing before the trial judge, but it did have the defendant's testimony at the sentence hearing before the jury incorporated into this hearing and considered by the judge. After a short recess, Judge Jasper entered findings of fact as required by Code of Alabama 1975, Section 13-11-4 andBeck v. State, 396 So.2d 645 (Ala. 1980), and sentenced the defendant to death.
In his fact findings from the sentence hearing before the court, Judge Jasper expressly indicated that he had reviewed the December 10, 1979 and March 18, 1980 reports of Dr. Estock "that the defendant displayed no evidence of psychosis and that he is competent to stand trial and aid in his defense." Judge Jasper found that no mitigating circumstances had been shown.
 A
The defendant argues that he was denied due process of law by not being allowed to have an independent psychiatric examination at the expense of the State.
We have repeatedly held that an indigent defendant in a criminal case has no constitutional right to the aid of the State by the appointment of a psychiatrist or other expert for his exclusive benefit. Thigpen v. State, 372 So.2d 385, 386
(Ala.Cr.App.), cert. denied, 372 So.2d 387 (Ala. 1979), cert. denied, 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660 (1980), and cases cited therein. See also Harris, supra, and Nelson, supra. Despite this, we cannot ignore the fact that an indigent defendant may have the right, under one or another constitutional guarantee, to appointment by the State of an investigator or expert where such services are shown to be necessary for an adequate defense. Anno. 34 A.L.R.3d 1256 (1970). However, "(w)hatever may be the extent of an indigent's right to an impartial psychiatric evaluation . . . we are of the opinion, on authority, that there exists no constitutional right to the appointment of a private psychiatrist of the defendant's own choosing at public expense." Satterfield v.Zahradnick, 572 F.2d 443 (4th Cir.), cert. denied,436 U.S. 920, 98 S.Ct. 2270, 56 L.Ed.2d 762 (1978).
Here, the defendant received, at his request, an examination by a court-appointed psychiatrist to determine whether a more extensive examination or empanelment of a lunacy commission pursuant to Alabama Code 1975, Section 15-16-22 was necessary. This psychiatrist found no evidence of psychosis and concluded that the defendant did not meet the criteria for involuntary commitment to the state mental hospital.
The defendant's pretrial motions for psychiatric examinations did not request that he be examined for the specific purpose of ascertaining the existence of any mental or emotional capacity or disturbance that would operate as a mitigating circumstance. Only at the sentencing hearing *Page 93 
required under Section 13-11-4, after the jury had already fixed the defendant's punishment at death, did defense counsel request a continuance so that the defendant "could be evaluated by a psychiatrist by someone competent in the field to determine if Mr. Clisby suffers from such illness or delusions or derangement that would bring him within the mitigating circumstances as prescribed by the statute."
Even recognizing that there can exist, under given circumstances, a constitutional right of an indigent to psychiatric assistance, we must also recognize that there should be some evidence, some indication, or some legitimate reason to believe in the existence of some mitigating factor before the defendant is allowed such a free and independent psychiatric examination.
In his brief on appeal, the Attorney General states the factors which the trial judge could have considered in evaluating the defendant's request for further psychiatric assistance. In our opinion, these factors support the ruling of the trial judge denying the defendant's request.
 "First, appellant had been examined prior to trial by a court-appointed psychiatrist who had concluded that there was no evidence of mental disorder or disturbance. Second, no evidence of mental disorder or disturbance was presented at trial. Third, in spite of the fact that the sentence hearing before the jury was conducted for the purpose of inquiring into aggravating and mitigating circumstances, the defendant did not present any evidence to support the Sections 13-11-7 (2) and (6) mitigating circumstances. Fourth, the confession which the defendant gave just seven days after the crime and the circumstances in which he gave that confession reflected a lucid, organized thought pattern. Fifth, appellant had taken the stand on voir dire at trial and on the punishment issue at the sentence hearing before the jury. Not only had appellant not testified as to any mental impairment, incapacity, or disturbance at the time of the crime, but his testimony had once again revealed a lucid, organized thought pattern unaffected by any mental problem or disturbance. In sum, at the Section 13-11-4 hearing when appellant asked for a continuance for purposes of further psychiatric examination and evaluation, there was absolutely no evidence that the defendant had suffered from any mental disease or incapacity or that he had acted under the influence of extreme mental or emotional disturbance within the meaning of the statutory mitigating circumstances. Everything indicated to the contrary."
There was no error in overruling the defendant's motion for a continuance so that he could have a mental examination. Simply, there was nothing before the court to compel the trial judge to the conclusion that he should have entertained some doubt of the defendant's mental capacity. Mack v. State, 375 So.2d 476,489 (Ala.Cr.App. 1978), affirmed, 375 So.2d 504 (Ala. 1979), vacated and remanded on other grounds, 448 U.S. 903,100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980). "The legislature has not given a right to a defendant to receive a mental examination whenever he requests one." Pace v. State, 284 Ala. 585, 587,226 So.2d 645 (1969); Nelson, 405 So.2d at 394. Absent such a right, the trial court is the screening agent for such requests and should order a mental examination only when there is some legitimate doubt of the defendant's mental condition.
Although the cases we have cited as authority deal with claims of insanity and incompetency to stand trial, the general principles they represent are applicable to a psychiatric examination for the purpose of obtaining expert testimony concerning any mitigating circumstance. Such an examination should not be ordered unless there is at least some evidence or indication that some mitigating circumstance might exist.
 B
The defendant also argues that at the sentence hearing (Section 13-11-4) the trial judge violated his Sixth Amendment right to counsel by considering the conclusions *Page 94 
of the court-appointed psychiatrist who had examined the defendant prior to trial. The defendant relies on Estelle v.Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) to support his argument that, since defense counsel was not notified in advance that the psychiatric evaluation would be used by the trial court in the sentencing hearing as evidence against the defendant, the defendant was denied his right to counsel.
In Estelle, the Supreme Court of the United States held that, where the State used the defendant's statements to a psychiatrist who had been sua sponte appointed by the trial judge to determine the defendant's competency to stand trial and the defendant had not been warned of his right to remain silent and that any statement he made could be used against him at his capital sentencing hearing, the defendant's Fifth Amendment privilege was violated. In Estelle, the psychiatrist evaluation was ordered even though defense counsel had not put in issue the accused's competency to stand trial or his sanity at the time of the offense. There the court was concerned with "whether a defendant's Sixth Amendment right to the assistance of counsel is abridged when the defendant is not given prior opportunity to consult with counsel about his participation in the psychiatric examination." 101 S.Ct. at 1877, n. 14.
There are at least three principal distinctions betweenEstelle and the present case. First, in this case, the results of the pretrial psychiatric examination were not used to establish any aggravating circumstance or any element the existence of which must be found before the imposition of the death penalty.
In Estelle, the results of the pretrial psychiatric examination were used by the State to establish the defendant's "future dangerousness" — one of the three critical elements the jury had to find existed before the judge could impose the death penalty. Here the psychiatrist's reports were simply referred to by the trial judge as a reason for denying the defendant's motion for a continuance in order to seek further
psychiatric evaluation.
The fact that the trial judge mentioned the psychiatrist's conclusions in his sentence findings does not indicate that he used those conclusions to negate any mitigating circumstance. Since the defendant did not present any evidence of the existence of any mitigating circumstance, the mitigating circumstance of Sections 13-11-7 (2) and (6) could not have been found even if the psychiatrist's conclusions had never been considered.
The second distinction between Estelle and the present case is that the pretrial psychiatric examination did not address any issue that defense counsel did not know in advance was going to be covered. Estelle, 101 S.Ct. at 1877. Here the interview with the psychiatrist can only be characterized as a routine competency examination restricted to ensuring that the defendant understood the charges against him and was capable in assisting in his defense. Here, the psychiatrist never went beyond simply reporting to the court on the issue of competency.
The third distinction between Estelle and the present case is that in Estelle the accused's Sixth Amendment interests were implicated because the accused did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent. In Estelle, the accused introduced no psychiatric evidence nor had he indicated that he might do so. 101 S.Ct. at 1874. Here, defense counsel, although the record does not reveal that he requested the initial examination, did request the second psychiatric examination. The conclusions of these two examinations are identical. Not only did defense counsel request a pretrial psychiatric examination in pretrial motions, but he even renewed his request in search of further examination before the Section 13-11-4 sentence hearing.
The facts of this case are distinguishable from those inEstelle, and we find that the trial court's reference at the sentence hearing to the conclusions of the pretrial *Page 95 
psychiatric examination did not violate the defendant's right to counsel.
 C
Finally, the defendant contends that the trial court's reference to the letters from a social worker concerning the psychiatrist's conclusions about the defendant's mental capacity denied the defendant his constitutional rights of confrontation and cross examination.
The State recognizes that the defendant had a right to confront and cross examine the psychiatrist upon request. These rights are guaranteed by the Sixth Amendment and by Alabama Code 1975, Section 13-11-3 which provides for the admission of any evidence deemed to have probative value, regardless of its admissibility under the exclusionary rules of evidence, "provided that the defendant is accorded a fair opportunity to rebut any hearsay statements."
After carefully examining the record, we agree with the Attorney General's position that the defendant's rights were not violated because the defendant never asked to examine or cross examine the psychiatrist.
The State's position is simply that appellant never asked to examine or cross examine the psychiatrist. Appellant did not attempt to subpoena the psychiatrist, nor did appellant request a continuance of the Section 13-11-4 hearing until the psychiatrist could be produced to testify in person. Instead, appellant elected to stake his position on the contention that the letters showed on their face that the psychiatrist's conclusions were immaterial to the sentencing issues. After the trial judge had read the letters into the record, he asked if either party had anything further. Rather than asking to examine or cross examine the psychiatrist, counsel for appellant replied, "No, sir."
Since appellant did not ask for an opportunity to confront and cross examine the psychiatrist, the trial court cannot be said to have denied appellant such an opportunity.
We have searched the record for error as required by law. Alabama Code 1975, Section 12-22-241. The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.