[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1228 
Appellant was originally sentenced to death on September 7, 1977, for the rape and murder of Cheryl Lynn Payton. That conviction was reversed by this Court on February 20, 1979, because of improper closing argument by the prosecutor and because of a variance between the indictment and judgment.Whisenhant v. State, 370 So.2d 1080 (Ala.Cr.App.), cert.denied, 370 So.2d 1106 (Ala. 1979). Appellant was retried and convicted under § 13A-5-31 (a)(3), Code of Alabama 1975, for the capital felony of rape when the victim, Cheryl Lynn Payton, was intentionally killed. After a separate hearing on aggravating and mitigating circumstances, the jury fixed appellant's punishment at death. Subsequently, the trial court weighed the aggravating and mitigating circumstances pursuant to § 13A-5-33, Code of Alabama 1975, and sentenced appellant to death. The court issued written findings of fact which enumerated the aggravating circumstances it deemed sufficient to support the sentence of death.[1]
The shocking facts surrounding the intentional killing of Cheryl Lynn Payton by appellant are set forth in detail in our previous opinion and are incorporated by reference herein.Whisenhant, supra.
 I
Appellant contends the trial judge erred in denying his motion for funds to employ two named independent psychiatrists of appellant's own choice.
The thrust of appellant's motion was to request funds in the amount of $3500 for the exclusive purpose of hiring two specifically named psychiatrists, Dr. Claude Brown and Dr. Emmanuel Tanay. A general request for non-specified psychiatric experts was not made by appellant, nor was a request for a re-evaluation by State psychiatrists submitted.
Appellant's motion asserted that neither Dr. Brown nor Dr. Tanay would assist the appellant by testifying at trial in the absence of payment for their assistance. The motion admits that both psychiatrists had previously extensively evaluated appellant and that testimony or reports by both men were admitted at the previous trial. It appears that the motion requested funds primarily to pay for their trial testimony at this trial, and not funds to conduct initial psychiatric evaluations of appellant.
Despite the assertion by appellant's counsel at trial and in brief, Dr. Brown did appear and testify as a State's subpoened witness at the final phase of the instant trial. At that hearing, Dr. Brown specifically stated that his opinion as to appellant's sanity at the present time had not changed from the time of his testimony at appellant's prior trial. Dr. Brown then testified as follows:
 "Q Now, Doctor, if the Defense had called you to the stand here in Mobile County, Alabama, in the case of State of *Page 1229 
Alabama v. Thomas Whisenhant which was tried this year, would your testimony have been the same as it was back in 1977?
"A I'm sure in essence it would have been, yes.
"Q In essence it would have been the same testimony?
"A Right.
"Q Okay, did the Defense call you to testify?
"A No.
"Q Did they subpoena you, Doctor?
"A Not that I recall.
 "Q Doctor, if the defense had called you to testify and had placed you under oath within the Court of law and in front of the jury in the case that was tried here just a little while ago in this courtroom, would your testimony have been essentially the same, even if you had not been paid one nickel by the Defense?
"A Yes.
 "Q Doctor, the Defense at this time, did they ever pay you anything with regard to your fee on the Whisenhant case?
"A In 1977, yes.
"Q Right.
"A They did.
"Q Okay. In 1981 did they pay you anything at all?
"A No.
 "Q And even if they had not paid you and they had brought you down here and had put you on the stand and has (sic) asked the same questions that were in the last trial, your testimony would have been essentially the same?
"A Yes."
(R. 729-720)
Another ground asserted by appellant for granting his motion for funds for the two named experts was that their testimony was necessary to rebut the testimony of State's witnesses Doctors Rudder, Kimbrough, Harrison, Kathandopondi, and Skinner, whom appellant presumed would testify for the State at the second trial. The record reveals that none of these men testified at appellant's second trial.
A defendant may have the right to the appointment by the State of an expert where it is shown to be necessary for an adequate defense. Clisby v. State, 456 So.2d 86 (Ala.Cr.App. 1982); Annot. 34 A.L.R.3d 1256 (1970). However there exists no constitutional right to the appointment of a private psychiatrist of a defendant's own choosing at public expense, as requested by appellant. Satterfield v. Zahradnick,572 F.2d 443 (4th Cir.), cert. denied, 436 U.S. 920, 98 S.Ct. 2270,56 L.Ed.2d 762 (1978); Clisby, supra; Thigpen v. State,372 So.2d 385 (Ala.Cr.App.), cert. denied, 372 So.2d 387 (Ala. 1979),cert. denied, 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660
(1980).
As in Satterfield, supra, appellant was examined by psychiatrists at a State mental hospital and found competent to stand trial. No motion was made by appellant's counsel at the second trial for a reexamination by the State hospital or for a psychiatric examination generally. We find as in Satterfield, that in light of the use of State statutory provisions for committing a criminal defendant to a State mental facility for examination and observation, no further duty devolves upon the State to appoint a private psychiatrist of appellant's own choosing at State expense for the benefit of indigent defendants. Here, as in Satterfield, the reports and testimony of the State psychiatrists indicating appellant's mental sanity were not submitted into evidence against appellant by the State.
Dr. Brown's testimony at the sentencing hearing indicated he could and would have testified as to appellant's insanity, based on his prior examination of appellant, had appellant's counsel chosen to subpoena him to testify at trial. Appellant could have procured psychiatric testimony, in addition to that of the State hospital personnel had he chosen to do so. SeeWilliams v. Martin, 618 F.2d 1021 (4th Cir. 1980) distinguishing Satterfield, supra.
As well, the trial court, pursuant to § 15-12-21 (d), Code of Alabama 1975, granted appellant the statutory maximum *Page 1230 
of $500 for use in obtaining expert assistance of his own determination, such to include "a psychologist to perform intelligence and personality tests on the defendant." To the extent the trial court felt the legislature had deemed appropriate, it granted appellant's motion for funds for expert witnesses. See Harris v. State, 352 So.2d 460 (Ala.Cr.App. 1976), affirmed, 352 So.2d 479 (Ala. 1977).
Considering the availability of the State psychiatric staff to testify; the appellant's knowledge of and access to the prior reports and testimony of Doctors Brown and Tanay, as well as the availability of Dr. Brown's present testimony; the lack of any positive testimony as to appellant's sanity by the State psychiatric experts; the $500 expense fee allowed by the trial court; and the appellant's failure to request other than specified private experts of his own choosing, we find no possible deprivation of any constitutional right of appellant in the matter of his sanity.
 II A
Appellant argues the trial judge erred in excluding certain jurors from the jury venire based upon their expressed opposition to the imposition of capital punishment. He contends the questions asked by the trial court were inadequate to excuse those jurors under the standard formulated inWitherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968).
In Witherspoon the test for excluding jurors is formulated as follows:
 "[N]othing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt. Nor does the decision in this case affect the validity of any sentence other than one of death. Nor, finally, does today's holding render invalid the conviction, as opposed to the sentence, in this or any other case."
391 at 522, 523, n. 21. (Emphasis added).
The questions asked of the jurors excused from the venire on this basis appear in the record as follows:
 "Is there any member of this jury who does not believe in the death penalty?
 "Now that I have asked that question I will ask several other questions, but first I will get your name, please, sir.
"JUROR: Francis Martin?
"THE COURT: Francis Martin?
"JUROR: M-A-R-T-I-N.
 "THE COURT: He's number 19 in panel number 2. Now, Mr. Martin, are you telling me that regardless of the facts and circumstances in this case, regardless of whatever the evidence may be, that because of your belief — that is, that you do not believe in the death penalty — that regardless of the facts and circumstances that you would automatically vote not guilty rather than vote death by electrocution?
 "JUROR: No, sir, I wouldn't vote that. What I would vote by sending him to the electric chair is not going to bring the one he killed back. I would rather see him work continuously until he is dead or until he is passed away, to let him know that the life he taken —
"THE COURT: All right. Just a minute.
"JUROR: — that he suffer for the life he had taken.
 "THE COURT: Just a minute. You are telling me, then, that regardless of the facts and circumstances you could never vote for death by electrocution? Are you telling me that?
 "JUROR: No, sir, my religion don't tell me (inaudible). It don't tell me that. My religion say a man shall pay, but not by death. Ain't but one — *Page 1231 
 "THE COURT: You're telling me, then — I don't want you to go through all of that. You're telling me then that regardless of the facts and circumstances in this case that you could not under any circumstances vote for death by electrocution. Are you telling me that? Yes or no.
"JUROR, No, sir, I couldn't vote for death.
"MR. GRADDICK: I challenge.
 "THE COURT: It's granted, over the objection of Mr. Carroll."
(R. 46-47)
. . . .
"JUROR: Sharon Barker.
 "THE COURT: All right, the same question to you, Mrs. Barker. Are you telling me that regardless of the facts and circumstances in this case that under no circumstances — under no circumstances, no facts would justify you in bringing in a verdict of death by electrocution? In other words, you would preclude that from your mind prior to the trial even starting?
"JUROR: That's right.
"MR. GRADDICK: Challenge.
 "THE COURT: Granted over the objections of Mr. Carroll."
(R. 48)
. . . .
"JUROR: Melvin Perryman.
"THE COURT: Melvin Perryman, and that's number 54.
 "Now, again, I have told you the various verdicts that may be brought in in this case, but if in the second stage of this case, that is, the sentencing stage, are you telling me prior to the start of this case and prior to knowing the facts in the case that regardless of what they would be, that because of your belief that you would not or could not under any circumstances render a verdict of death by electrocution?
"JUROR: That's right, sir.
"THE COURT: That's what you're telling me?
"JUROR: Yes, sir.
"MR. GRADDICK: Challenge.
 "THE COURT: Granted, again over the objections of the attorneys for the Defendant and you may go back to —"
(R. 48-49)
. . . .
"JUROR: Patricia Moore, panel six.
 "THE COURT: Patricia Moore, panel six, and that's number sixty-six, and ma'am, are you telling me that in the second phase of the trial, should it come to that, regardless of the facts and circumstances that you would, because of your personal belief —
"JUROR: Yes, sir.
 "THE COURT: — or you could not because of your personal belief vote for the penalty of death by electrocution.
"JUROR: Yes.
"MR. GRADDICK: Challenge for cause.
 "THE COURT: That's number 66. You may go back to that uncomfortable room.
"CLERK: Strike Patricia Moore."
(R. 49)
. . . .
"JUROR: Bonita Steen, panel five.
 "THE COURT: All right, number 49, Bonita Steen. Are you telling me that regardless of the facts and circumstances which may be presented in this case, in the sentencing phase that you would automatically refuse to return a verdict of death by electrocution regardless of what the facts and circumstances are?
"JUROR: Yes, I am.
"MR. GRADDICK: Challenge.
 "THE COURT: You may go back to that uncomfortable room.
"CLERK: In panel number five strike Bonita Steen."
(R. 49-50)
Having viewed the venire questioning in light of Witherspoon
and Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138,22 L.Ed.2d 433 (1969), we find the trial court properly excused the questioned jurors under an appropriate prong of the Witherspoon
standards. Dobard v. State, 435 So.2d 1338 (Ala.Cr.App. 1982). *Page 1232 
 B
Appellant alleges the jurors were improperly excused in that the trial court refused to allow appellant's attorney to have the opportunity to interview those jurors who were opposed to the death penalty out of the presence of the other jurors. No request was made to interview these jurors on this matter in the presence of the other members of the venire.
We know of no rule of law which would have required the sequestration of the named jurors for questioning by appellant. This was a matter for the discretion of the trial judge.Beecher v. State, 288 Ala. 1, 256 So.2d 154 (1971), rev'd onother grounds, 408 U.S. 234, 92 S.Ct. 2282, 33 L.Ed.2d 317
(1971); Collins v. State, 271 Ark. 825, 611 S.W.2d 182, cert.denied, 452 U.S. 973, 101 S.Ct. 3127, 69 L.Ed.2d 984 (1981);Turner v. Commonwealth, 221 Va. 513, 273 S.E.2d 36 (1980),cert. denied, 451 U.S. 1011, 101 S.Ct. 2347, 68 L.Ed.2d 863
(1981). Further we find that the answers of the disqualified jurors unmistakenly and plainly controverted the Witherspoon standards. Burns v. Estelle, 626 F.2d 396 (5th Cir. 1980). No further questioning was necessary to reveal the extent and nature of the jurors' beliefs. Additionally, had appellant desired further questioning of the jurors, he could have requested that the judge make further inquiry or that appellant be allowed to do so in the presence of the other jury venire members. See Griffin v. State, 383 So.2d 873 (Ala.Cr.App.)cert. denied, 383 So.2d 880 (Ala. 1980).
 III
Appellant contends error occurred when the trial court allowed four prospective jurors, who knew or were told that appellant had been previously convicted of the offense for which he was then being retried, to serve as trial jurors.
Citing United States v. Williams, 568 F.2d 464 (5th Cir. 1978), appellant contends that persons who have learned of a defendant's prior criminal record are presumed to be prejudiced, especially where the jurors receive information that a jury had previously convicted the defendant of the very crime charged.
Two notable factual distinctions are apparent betweenWilliams and this case. First, the rule applied in Williams is a rule applied by the United States Supreme Court and other federal courts to federal criminal trials, in the context of the Supreme Courts "supervisory power to formulate . . . proper standards for enforcement of the criminal law in the federal courts. . . ." Marshall v. United States, 360 U.S. 310, 312,79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250, 1252 (1959). As the court inWilliams points out, "[T]he Marshall rule is considerably broader than the constitutional standard and provides more protection against prejudice." Williams, 568 F.2d at 469.
The second factual distinction to be noted is that Williams
involved information concerning the prior conviction learned by jurors during trial from a television newscast, which the court deemed to contain greater opportunities for prejudice thanpretrial publicity. In the instant case the four jurors who served at trial learned of the conviction either through pretrial publicity, or through answers to questions elicited by appellant himself during the jury venire voir dire as to jurors' unconfirmed, often factually unsound, independent recollections of the prior disposition of the case.
In applying Marshall, the court in Williams was careful to point out that each case must turn on its own special facts in determining the extent and degree of potential prejudice.
The State persuasively contends that the appropriate standard to be applied in this case is not the Marshall rule, but rather the rule expressed in Murphy v. Florida, 421 U.S. 794,95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Murphy specifically states that the Marshall rule has no application beyond the federal courts. The appropriate standard to be applied is to look at the totality of the circumstances to determine if the appellant's trial was fundamentally fair. It is constitutionally sufficient if the juror can *Page 1233 
lay aside his impression or opinion and render a fair and impartial verdict based on the evidence presented in court. The appellant must demonstrate the actual existence of an opinion in the mind of the juror which raises a presumption of partiality. Murphy, supra.
We have reviewed the voir dire of the four jurors who remained on the jury panel and find that appellant has fallen short of demonstrating an inference of factual prejudice. Juror Macon indicated the following recollections:
 "Mr. Macon, can you tell us pretty much what you remember from what you've read or heard about it?
 "JUROR: The biggest thing I recollect is that I believe the thing was thrown out, was it not, to be retried. When this thing happened initially — it's been four years or so ago — I think I probably heard something on the radio at that particular time, but very little. I don't recall a lot about it.
 "MR. DEES: I see. From what you remember, do you know anything that might have happened in the case, what kind of crimes took place or anything, from what you remember?
 "JUROR: Well, the best I recollect I believe there was a convenience store involved and a robbery or maybe there was a robbery. I'm not even sure about that, and this man I believe was accused of murdering the employee, and, really, that's about all I can recollect. I don't remember any details or anything."
(R. 142-143)
The record does not reveal any knowledge on the part of Juror Johnston although one juror on his venire panel stated the following factual inaccuracy:
 "MR. DEES: Do you know what, if anything, happened to him after he was arrested for that?
 "JUROR: None other than he was tried, and given life, I think."
(R. 180)
Juror Stevens appears to have stated this recollection:
 "MR. DEES: Is that what each of you understand to be what happened in the case?
 "JUROR: I'm not sure. I know that it was overturned, but I'm not sure."
(R. 253)
However, another prospective juror on Juror Stevens' panel made this statement:
 "MR. DEES: What happened in any former trial or proceeding in this case? Do you know?
 "JUROR: I believe the Defendant was found guilty in the trial in Birmingham and then it discontinued, I believe, on an appeals court because of something that was alleged to have been said by the Attorney General." (R. 253)
The final juror, Mr. Emerson, stated the following:
 "MR. DEES: Mr. Emerson, could you tell me what pretty much sticks in your mind about what you may know about this case from prior publicity?
 "JUROR: Just the 7-11 girl was taken from the 7-11, and as far as conviction, I never even —
"MR. DEES: Never knew it?
"JUROR: I travel, so I'm out of town."
(R. 265)
Another juror on Mr. Emerson's panel responded to defense counsel as follows:
 "Mrs. Bloess, could you just kind of your recollections, just generally what you might have read about this case, seen, heard or know in general?
 "JUROR: Basically, what I recollect, that he was convicted of murdering the lady in the Pak-A-Sack, I believe.
"MR. DEES: Yes, ma'am.
"JUROR: And tried and convicted." (R. 264)
Having reviewed the questions and answers in relation to the entire jury venire selection process, we find no empaneled juror who expressed any belief in the relevancy of his or any other juror's recollections as to appellant's prior conviction.[2] *Page 1234 
Viewing the totality of the circumstances, we simply do not find the vague knowledge of the jurors in this case as to appellant's prior conviction to have been inherently prejudicial to appellant's case. As well, appellant has failed to carry the burden of proving the existence of actual prejudice as a result of any such knowledge on the part of these jurors. Lowe v. State, 384 So.2d 1164 (Ala.Cr.App.),cert. denied, 384 So.2d 1171 (1980).
 IV
Appellant alleges the trial court erred in refusing to charge the jury, at the penalty phase of the trial, that proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances, must exist before the death penalty may be imposed. The trial court instructed the jury in part as to burden of proof as follows:
 "If you unanimously find beyond a reasonable doubt that one or more of the three aggravating circumstances I instructed you on previously does not exist in this case, then you should proceed to weigh the aggravating circumstance or circumstances against the mitigating circumstances. Excuse me, I said does not; does exist. I instructed you previously does exist in this case, then you should proceed to weigh that aggravating circumstance or circumstances against the mitigating circumstances which exist in this case. Based upon that weighing process you should determine whether the punishment of the Defendant in this case should be fixed at life imprisonment without parole or at death.
 "The process of weighing aggravating and mitigating circumstances against each other in order to determine the proper punishment is not a mechanical process. Your weighing of the circumstances against each other should not consist of merely adding up the number of aggravating circumstances and comparing that number to the total of mitigating circumstances. The law of this State recognizes that it is possible in at least some situations that one or a few aggravating circumstances might outweigh a large number of mitigating circumstances. The law of this State also recognizes that it is possible in at least some instances that a large number of aggravating circumstances might be outweighed by one or a few mitigating circumstances. In other words, the law contemplates that different circumstances may be given different weights or values in determining the sentence in a case and you, the jury, are to decide what weight or value in determining sentence is to be given to a particular circumstance in light of all the circumstances that you have heard in this case. You must do that in the process of weighing the aggravating circumstance or circumstances against the mitigating circumstances.
 "In reaching your findings concerning the aggravating and mitigating circumstances in this case and in determining what the punishment in this case should be, you must avoid any influence of passion, prejudice or other arbitrary factors. Your deliberation and verdict should be based upon the evidence that you have seen and heard and the law which I have instructed you on. There is no room for the influence of passion, prejudice or other arbitrary factor and it is your solemn duty to avoid the influence of such factors."
(R. 717-718)
Appellant apparently contends, as did the Florida petitioner in Ford v. Strickland, 676 F.2d 434 (11th Cir. 1982) that the crime of capital felony in Alabama includes the element of mitigating circumstances not outweighing aggravating circumstances, which as an element of the substantive crime, must be proved beyond a reasonable doubt, as required by In reWinship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 *Page 1235 
(1970). We also reject this argument as did the court in Ford.
Under the Alabama Death Penalty Statute as modified by Beckv. State, 396 So.2d 645 (Ala. 1980), the sentence determining phase is entirely separate from the trial on the guilt finding phase of the capital offense. That the mitigating must outweigh the aggravating factors is not an element of the capital offense in Alabama. The sentencing procedure outlined in Beck
only applies in the event the defendant is first found guilty of the substantive capital offense.
 "The central issue in the guilt phase of the trial will be whether the State has satisfied its burden of proving beyond a reasonable doubt that the defendant is guilty of a capital crime. In the event the defendant is found guilty of the capital offense, the sentencing procedures hereinafter outlined shall apply."
396 So.2d at 662
In Alabama, the State must prove the aggravating circumstances averred in the indictment beyond a reasonable doubt.
However, the fact that due process protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged is not relevant under Beck as to weighing aggravating and mitigating circumstances at the sentence determining phase.
The separate acts of proving facts at the guilt phase and weighing facts against each other at the penalty phase are not to be confused.
 "While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party. Petitioner's contrary suggestion is based on a misunderstanding of the weighing process, the statute and the guiding and channeling function identified in Proffitt v. Florida, 428 U.S. [242] at 258, 96 S.Ct. [2960] at 2969 [49 L.Ed.2d 913]. Indeed, it appears no case has applied In re Winship in the manner Ford urges. The North Carolina and Utah cases cited by him which imposed a reasonable doubt standard in this situation turned on construction of state statutes rather than the due process rationale of In re Winship. See State v. Johnson, 257 S.E.2d at 617, and State v. Woods, 648 P.2d 71 (1981) [No. 16486, Sept. 21, 1981]."
676 F.2d at 442.
As well, at the sentencing phase the State is permitted to offer any other statutorily listed aggravating circumstance which was not averred in the indictment, but which was proved beyond a reasonable doubt at the guilt phase at the sentencing hearing. Beck at 663. Thus while the aggravating circumstances must be proven beyond a reasonable doubt, the jury may return the death penalty if it simply does not find the aggravating circumstances are outweighed by the mitigating circumstances. We find this to be in accord with sentencing procedures previously upheld as meeting constitutional standards. Gray v.Lucas, 677 F.2d 1086 (5th Cir. 1982). See also People v.Frierson, 25 Cal.3d 142, 158 Cal.Rptr. 281, 599 P.2d 587
(1979).
Finally, considering (1) that Alabama law requires the trial judge to file written findings of fact sustaining the death penalty and (2) that Beck ensures the function of appellate review is to guarantee similar results in similar circumstances under all cases, we find no error in allowing Alabama jurors to "weigh" the aggravating and mitigating factors, as opposed to determining them under a reasonable doubt standard.
 V
Appellant argues the court erred in refusing to give the following requested charge:
 "If you see fit, whether mitigating circumstances exist or not, you may recommend *Page 1236 
mercy for the defendant. This recommendation is solely in your discretion and not controlled by any rule of law. You may make such recommendation with or without a reason."
(R. 116)
This charge was correctly refused because it is an erroneous statement of the law in Alabama. The correct principle underlying this issue is stated in Beck, supra, as follows:
 "The court shall instruct the jury that in determining whether to fix a punishment of death, the jury must weigh the aggravating and mitigating circumstances in determining whether to fix the punishment at death. The trial court shall instruct the jury to avoid any influence of passion, prejudice or other arbitrary factor while deliberating and fixing the sentence."
396 So.2d at 663.
Clearly, it is the duty of the jury to weigh mitigating and aggravating circumstances in its decision. The jury is not free, as appellant's charge suggests, to arbitrarily ignore any factor, positive or negative, in arriving at the correct sentence.
As well, we view Proffitt v. Florida, 428 U.S. 242,96 S.Ct. 2760, 49 L.Ed.2d 913 (1976) to have tacitly held that the availability of such a mercy option to the sentencing authority is not a constitutional requirement. As Mr. Justice White's concurring opinion in Proffitt points out, the sentencing authority in Florida is required to impose the death penalty on all first degree murderers as to whom the statutory aggravating circumstances outweigh the mitigating circumstances. Proffitt
at 260. This required imposition of the death penalty, regardless of mercy, passed constitutional muster in Proffitt, and is in keeping with the concern that arbitrary and capricious imposition of the death penalty be avoided. Hopperv. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).
 VI
Appellant questions the trial court's refusal to give the following charge:
 "In this proceeding, if your verdict is not unanimous the defendant will be sentenced to life imprisonment without the possibility of parole."
(R. 116)
Appellant contends that because the charge virtually tracks language from Beck, supra, that its refusal was error. In Beck, the court stated the following:
 "If the jury cannot agree on a sentence of death, the defendant shall be sentenced to life imprisonment without parole. If the jury fixes the punishment at death, the court shall hold a hearing as mandated by § 13-11-3 and § 13-11-4."
369 So.2d at 663
The fact that a statement of law appears in an opinion of the Alabama Supreme Court does not of itself require that the same be given by a trial court in its instructions to the jury.Scruggs v. State, 380 So.2d 308 (Ala.Cr.App. 1979), cert.denied, 380 So.2d 313 (Ala. 1980). Many times statements of law are properly made in appellate opinions which are not proper to be given as required charges to jurors in other cases. Knightv. State, 273 Ala. 480, 142 So.2d 899 (1962).
As quoted in part V above, Beck sets forth the instructions due to be given the jury at the time it enters into deliberation at the penalty phase. The procedural and legal effect of their inability to reach a unanimous verdict is not included by the Supreme Court as a pertinent instruction to the jury. Rather, this instruction is directed to the trial court alone in the event the jury cannot agree on a sentence of death. This fact need not be divulged to the jury. State v.Adams, 277 S.C. 115, 283 S.E.2d 582 (1981).
While appellant's requested charge was a correct statement of law, it concerned a procedural matter and was not a proper subject of instruction to the jury. The likely and undesirable effect of such an instruction would have been to give "an open invitation to the jury to avoid its responsibility and to disagree." Justus v. Com., 220 Va. 971, 266 S.E.2d 87 (1980); see also State v. Johnson, 298 N.C. 355, *Page 1237 259 S.E.2d 752 (1979); State v. Hutchins, 303 N.C. 321,279 S.E.2d 788 (1981).
 VII
There was no error, as contended by appellant, in the trial judge's refusal to recuse himself from this case. Appellant's contention is based solely upon the fact that this same trial judge heard this case and imposed the death penalty in the appellant's prior trial. This indicates, in appellant's view, a pre-judgment of the appropriateness of the death penalty in the instant trial and thereby deprives appellant of a judgment based upon reason, rather than caprice or emotion.
While a true personal bias will disqualify a jury, a judicial bias, if one exists, will not disqualify a trial judge from hearing a case. Koch v. State, 401 So.2d 796 (Ala.Cr.App.),cert. denied, 401 So.2d 801 (1981). Appellant has failed to demonstrate any semblance of a personal bias on the part of the trial judge.
 VIII
Appellant argues that the trial judge rested his decision to affirm the jury's sentence of death on a non-statutory aggravating circumstance, thus rendering appellant's sentence invalid. Appellant's contention is factually without merit. The record reveals the following factors are included in the trial court's recitation of aggravating circumstances:
 "The Court having conducted a hearing pursuant to Title 13-11-3 of the Code of Alabama to determine whether or not the Court will sentence Mr. Thomas Warren Whisenhant to death or to life imprisonment without parole, and the Court having considered the evidence presented at the trial and said sentencing hearing; the Court makes the following findings of fact:
 "The Court first considers the aggravating circumstances as outlined and described in Title 13-11-6. They are as follows:
 "Number one, the Court finds that the Capital Felony was committed by the Defendant while he was under sentence of imprisonment, although he was serving the latter part of his sentence on parole at the time.
 "Two, the Court finds no evidence that Mr. Thomas Warren Whisenhant was previously convicted of another Capital Felony. The Court does find that the aforementioned sentence of imprisonment in Subparagraph One was a felony involving the use of violence to the person. And, in addition thereto, the Court heard uncontradicted evidence that Mr. Whisenhant murdered at least two other women other than Cheryl Lynn Payton. "Three, the Court finds that other than set out above in Subparagraph Two there is no creditable evidence that the Defendant did knowingly create a risk of death to other persons. However, the evidence is overwhelming that the only reason being that he was apprehended, and the Court finds convincing evidence that if the Defendant were returned to a free society that he would kill again.
 "Four, the Court finds that the Capital Felony was committed shortly after the Defendant raped the deceased Cheryl Lynn Payton.
 "Five, the Court finds that the Capital Felony was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
 "Six, the Court finds that the Capital Felony was not committed for pecuniary gain.
 "Seven, the Court finds the Capital Felony was not committed to disrupt or hinder the legal — excuse me, the lawful exercise of any governmental function or the enforcement of laws.
 "Eight, the Court is of the opinion that the Capital Felony of Cheryl Lynn Payton was especially heinous, atrocious or cruel. The Defendant with purpose, intent and design abducted the deceased from her employment at the Compac Store, then drove her to a secluded area *Page 1238 
in Mobile County, Alabama, and while raining outside his vehicle he forced her to disrobe and raped her. The Defendant then by force led the deceased to a wet wooded area adjacent to his vehicle and shot her in the head. The testimony revealed the deceased's death as being extremely painful and cruel. As the Court has stated, it is the personal opinion of this Court that the Capital Felony was especially heinous, atrocious or cruel, but the Court has little precedent or authority which would allow it to hold, as a matter of law, that the Capital Felony meets the test of being especially heinous, atrocious or cruel as set out in the Code of Alabama. The Court is aware of the case of State v. Dixon, 283 So.2d 1, at page 9, wherein the Supreme Court of Florida in speaking on this point of especially heinous, atrocious or cruel said, and I quote:
 "`. . . Again, we feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended. It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the Capital Felony was accompanied by such additional acts as to set the crime apart from the norm of Capital Felonies — the conscienceless or pitiless crime which is unnecessarily tortuous to the victim.'
 "If this be the legal test on this point, then this Court is led to no other conclusion from the evidence than that the Capital Felony was especially heinous, atrocious or cruel. However, since the Court is not certain as to the true legal meaning of this term, `heinous, atrocious or cruel,' the Court makes no finding as a matter of law on this point.
 "But the Court does find beyond a reasonable doubt that to a moral certainty that the aggravating circumstances described in Title 13-11-6 and set out hereinabove in Subparagraphs (1), (2) and (4) particularly apply to the Defendant Thomas Warren Whisenhant in this case."
(R. 749-752)
While the trial judge earlier in his written findings upon sentencing appellant did state that the court found evidence that if appellant were returned to a free society he would kill again, the court did not find that to be, nor did it include it or rely upon it as, an aggravating circumstance to be considered in fixing appellant's punishment at death.
Appellant's contention as to Henry v. Wainwright, 661 F.2d 56
(5th Cir. 1981), vacated and remanded for consideration,457 U.S. 1114, 102 S.Ct. 2922, 73 L.Ed.2d 1326 (1982) is also factually without merit. There is nothing to indicate that the jury was ever allowed to entertain the idea that the alleged nonstatutory aggravating circumstances referred to above could be considered by them in determining appellant's sentence.
 IX
Appellant argues the trial court's death qualification of the jury venire pursuant to Witherspoon, supra was error, apparently because the nine jurors who were excused on the basis of their inability to follow the law because of their personal views about capital punishment were all black. Appellant having made no demonstration to prove error and having rested on the mere assertion of error, this issue is without merit. Smith v. Balkcom, 660 F.2d 573 (5th Cir. 1981), modified at 671 F.2d 858 (5th Cir. 1982), cert. pending, (June 26, 1982); see also Lockett v. Ohio, 438 U.S. 586,98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
 X
Despite appellant's contention to the contrary, the Alabama Supreme Court acted constitutionally in revising Alabama's *Page 1239 
Capital Felony statute in Beck, supra. Clisby, supra.
 XI
Appellant alleges that under the Alabama law pursuant to which appellant was tried, it is impossible to have a meaningful review of the application of the death penalty to appellant because the jury was not required to state which aggravating and mitigating circumstances they considered in determining appellant's sentence.
Under Beck, supra, when the death penalty is imposed, the trial judge must review and issue written findings of fact setting forth his determination of sentence pursuant to § 13A-5-33, Code of Alabama 1975. These written findings of the trial court, which must set forth both aggravating and mitigating circumstances, provide the basis necessary for the review of the imposition of the death penalty in all cases before this court. The Beck decision requires nothing further, nor do we believe does the United States Constitution.Proffitt, supra. Bush v. State, 431 So.2d 555 (Ala.Cr.App. 1982), rehearing denied November 2, 1982.
 XII
In the prosecutor's opening statement at the penalty phase of the trial, the following factual assertions were made:
 "They have used some year of 1965 when all of his troubles began. I wrote down — I quoted them, wrote it down on a legal pad. `This is when all of his troubles began.' All of his troubles did not begin in 1965. He robbed a blind black lady in Prichard, Alabama and was able to `beat' that charge on a technicality. He purse snatched and I think a police lieutenant will tell you about a situation with regards to another homicide in Prichard, Alabama. So, if three murders and beating someone close to death is not bad enough, we can see where he started when he was a very young man and has just been a career criminal, dangerous, violent person all of his life." (R. 654)
No evidence concerning a blind black lady nor a purse snatching, nor another homicide was ever introduced at any phase of appellant's trial. The prosecutor apparently made these references in anticipation of the defense introducing such evidence to demonstrate appellant's insanity, just as the defense had done at appellant's first trial. No such evidence was introduced by appellant at the second trial. Neither did the trial court instruct the jury to disregard these remarks as having created error. As this court has previously stated:
 "It has been specifically held that remarks by the prosecutor which accuse the defendant of the commission of a crime other than that for which he is on trial and which are unsupported by any evidence in the case, require reversal. Bevins v. State, 39 Ala. App. 228, 229, 97 So.2d 572, cert. denied, 266 Ala. 695, 97 So.2d 574 (1957)."
373 So.2d at 1262
Because these remarks were made after the completion of the guilt stage of the bifurcated trial, they created no error as to appellant's conviction. However, the penalty phase of appellant's trial was impermissibly prejudiced by the prosecutor's remarks.
Appellant's conviction and sentence having been the product of a bifurcated trial, involving two separate hearings, we do not deem it necessary to reverse appellant's conviction. Appellant received a fair trial as to his guilt of the substantive crime and the conviction itself should be affirmed. However, due to the statements discussed above, this cause must be remanded with directions that a new sentencing hearing be held. Because the original jury has been prejudiced, the hearing must necessarily be conducted before another jury, which shall review the entire evidence presented at trial before rendering its verdict. Berard v. State, 402 So.2d 1044
(Ala.Cr.App. 1981).
The capital felony law under which this case was tried, interpreted by Beck to require a bifurcated trial, does not state that the same jury which convicts a defendant must sentence him as well. While no provision was made for an appropriate decree on appeal if error was found only in *Page 1240 
the sentencing phase and not the guilt phase, we view this course as appropriate. Miller v. State, 237 Ga. 557,229 S.E.2d 376 (1976); Rouse v. State, 222 So.2d 145 (Miss. 1969); but seeState v. English, 367 So.2d 815 (La. 1979); Ellison v. State,432 S.W.2d 955 (Texas 1968).
Although the trial judge and not the jury is the sentencing authority in Alabama, Beck, supra, the jury's function is sufficiently important to require a remand for a new sentencing hearing before the jury where that phase of the trial is tainted. Beck, supra, at 659.
Other questionable remarks made by the prosecutor and argued as error by appellant are not likely to be made again at trial and will not be addressed because of our decision to remand. See, however, 16 A.L.R.2d 1137 (1967).
The guilt phase of the trial will stand. A new jury will be empaneled to review anew the evidence at the penalty phase, including all relevant aggravating and mitigating circumstances. We believe this course of action to be in keeping with the bifurcated proceeding established in Beck. Theguilt phase is affirmed.
REMANDED WITH DIRECTIONS FOR A NEW SENTENCING HEARING.
All the Judges concur.
 APPENDIX A
The Court now considers the mitigating circumstances as described and set out in Title 13-11-7:
Number one, the Court finds that Mr. Thomas Warren Whisenhant has a significant history of prior criminal activity.
Two, the Court finds that the Capital Felony was not committed while Mr. Whisenhant was under the influence of extreme mental or emotional disturbance; however, the Defendant was or may have been suffering from mental distress or disorder, but the Capital Felony was not the product of such disorder.
The Court finds that the victim was not a participant in Mr. Whisenhant's conduct, and did not consent to the act.
The Court finds that Mr. Whisenhant was not an accomplice to the Capital Felony committed, but was, in fact, the person who raped and fired the shot causing the death of Cheryl Lynn Payton, deceased.
The Court finds that Mr. Whisenhant did not act under duress or under the substantial domination of another person.
The Court finds that the capacity of Mr. Whisenhant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired.
The Court having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating circumstances and mitigating circumstances, the Court is convinced beyond a reasonable doubt and to a moral certainty and it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the jury should be and is hereby accepted.
It is therefore considered and adjudged by the Court that Thomas Warren Whisenhant is guilty of the Capital Felony charged in the indictment, and specifically of intentionally raping and killing Cheryl Lynn Payton, deceased. It is therefore ordered and adjudged that you, Thomas Warren Whisenhant, suffer death by electrocution at any time before the hour of sunrise on the 9th day of December, 1981, inside the walls of the William C. Holman Unit of the Prison System at Atmore, Alabama, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution.
It is therefore further ordered and adjudged by the Court that the Warden of William C. Holman Unit of the Prison System at Atmore, or in case of his death, disability or absence, his Deputy, or in the event of the death, disability, or absence of both the Warden and his Deputy, then the person designated as Administrator by law *Page 1241 
for such purposes, at any time before the hour of sunrise shall on the 9th day of December, 1981, inside the walls of the William C. Holman Unit of the Prison System at Atmore, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution, cause to pass through the body of the said Thomas Warren Whisenhant, a current of electricity of sufficient intensity to cause his death, and the continual application of such current through the body of said Thomas Warren Whisenhant until the said Thomas Warren Whisenhant be dead, and may Almighty God have mercy on your soul.
You may take him away.
[1] The trial court's findings of fact and sentencing are attached as Appendix A.
[2] The judge asked the venire this question: "Is there any member of this jury who thinks because of the seriousness of the charge that they would in any way lean more heavily or closely to the State's side, in other words, biased against the Defendant in some way?" (R. 50) The single juror who responded affirmatively was excused from the venire.