[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 394 
The defendant was indicted for the robbery and intentional killing of James Dewey Cash in violation of Alabama Code 1975, Section 13-11-2 (a)(2). A jury found the defendant "guilty of the intentional killing of James Dewey Cash while in the course of robbing the said James Dewey Cash as charged in the indictment and fixed his punishment at death". After weighing the aggravating and mitigating circumstances, the trial judge accepted the death penalty as fixed by the jury and sentenced the defendant to death by electrocution.
 I
The constitutionality of the Alabama Death Penalty Act, Alabama Code 1975, Section 13-11-1 through Section 13-11-9, has been upheld. Jacobs v. State, 361 So.2d 607 (Ala.Cr.App. 1977), affirmed, 361 So.2d 640 (Ala. 1978), cert. denied,439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979). The defendant has raised no new or additional reason for invalidating this act which we have not previously considered. Cade v. State,375 So.2d 802 (Ala.Cr.App. 1978), affirmed, Ex parte Cade,375 So.2d 828 (Ala. 1979); Wilson v. State, 371 So.2d 932
(Ala.Cr.App. 1978), affirmed, 371 So.2d 943 (Ala. 1979); Beckv. State, 365 So.2d 985 (Ala.Cr.App.), affirmed, 365 So.2d 1006
(Ala. 1978).
 II
"It has been repeatedly held that a denial of funds to pay defense experts for investigations and the assistance of experts does not amount to a deprivation of constitutional rights." Thigpen v. State, 372 So.2d 385, 386 (Ala.Cr.App.), cert. denied, 372 So.2d 387 (Ala. 1979). This includes psychiatric specialists and experts. Tillis v. State, 292 Ala. 521, 296 So.2d 892 (1974). Pursuant to the defendant's motion for a psychiatric evaluation, the court ordered the defendant examined by a licensed psychiatrist to determine if the defendant was suffering from any mental illness. This doctor found "no evidence of any mental disease process at all". The court stated that it would consider a "prolonged examination" if there were any evidence that such was warranted. There was no plea of not guilty by reason of insanity. We find no error in the court's refusal to order further psychiatric evaluation. The fact that a defendant who has been indicted for murder is indigent does not entitle him to a free psychiatric examination. Gales v. State, 338 So.2d 436, 437 (Ala.Cr.App.), cert. denied, 338 So.2d 438 (Ala. 1976). A defendant has no right to receive a mental examination as to his sanity whenever he requests one. Pace v. State, 284 Ala. 585, 587,226 So.2d 645 (1969). *Page 395 
 III
The defendant alleges that he was denied his constitutional rights by the facts that he was not given a preliminary hearing or an "adequate" hearing on his habeas corpus petition.
In Alabama there is no constitutional right to a preliminary hearing. Ex parte Flanigan, 278 Ala. 432, 178 So.2d 825 (1965). A preliminary hearing is not necessary to satisfy the requirements of due process. Scaife v. State, 337 So.2d 146
(Ala.Cr.App. 1976); Trammell v. State, 43 Ala. App. 308,189 So.2d 760, cert. stricken, 280 Ala. 31, 189 So.2d 763 (1966). The defendant does not contend that he was denied any statutory right to a preliminary hearing under Alabama Code 1975, Section15-11-1. See Duncan v. State, 369 So.2d 885 (Ala.Cr.App. 1979). Even if the statute he construed as giving a defendant an "absolute right" to a preliminary hearing upon timely request, the record contains no showing that any demand for a hearing was made by the defendant within thirty days following his arrest, as required by statute.[1]
Initially the defendant was charged with two cases of first degree murder and one case of assault with intent to murder. Later he was charged under the Alabama Death Penalty Act for the two homicides.
With regard to the preliminary hearing, the record does show that on February 21, 1978, the defendant's case was set down for a preliminary hearing. At this time defense counsel was "notified by the court that between the time of my appointment which was February 14th and February 21st, that the court had received information that in all likelihood this would be a capital case, and that I was not competent to try — to handle a capital case alone". Defendant's appointed counsel, on the two first degree murder charges which eventually became the basis for the capital indictments, had not had five years' prior experience in the active practice of criminal law as required by Alabama Code 1975, Section 13-11-8, and was therefore not qualified to represent defendant in a capital case.
Experienced counsel was appointed to represent the defendant on March 14, 1978. On that date, although witnesses were present and the parties were ready to proceed, no preliminary hearing was held because the trial judge informed them "that the case had already been put on the grand jury and that, although (the defendant) had not yet been indicted, the case was waiting for the April grand jury, and, therefore, we could not have a preliminary hearing". Assertions in the record indicate that a preliminary hearing was not held sooner because the State's key witness, Ms. Linda Vice, was in the hospital because of actions by the defendant which formed the basis of an assault with intent to murder charge against him or because the State could not find her.
Defense counsel "immediately" filed a petition for writ of habeas corpus which was granted. Within two weeks a hearing was held and defense counsel had the opportunity to cross examine Ms. Vice and other witnesses for the State.
We attach no constitutional significance to the fact that defense counsel who participated in the habeas corpus hearing was different from defendant's trial counsel who was appointed at a later date. There has been no allegation or indication that counsel was incompetent or negligent in his representation of the defendant. The fact that counsel admitted that his "cross examination was not as extensive . . . as it should have been" only indicates the value of hindsight.
The trial court denied a petition for a second habeas corpus hearing "in view of *Page 396 
the court's ruling allowing the disclosure and the discovery". The court granted substantially all the discovery requested by the defendant. These matters included "the district attorney's assurance that he will make available whatever information as to the prospective jurors that may be called"; the district attorney's assurance that he would disclose any favored treatment any witness might receive such as "any forbearance from criminal prosecution or investigation or anything affecting someone's liberty or financial interest" other than the usual witness fees for transportation and lodging; the criminal record of any State witness; allowing the defendant to inspect any physical evidence; all the statements the State had from all witnesses that made statements, including toxicologist's reports and the result of blood sample tests; and all matters alleged in defendant's "motion for information necessary to receive a fair trial" and his "motion to compel disclosure".
From a reading of the record it is obvious that the sole purpose of the preliminary hearing and second habeas corpus hearing was discovery. In view of the fact that one habeas corpus hearing had been held at which defense counsel had been permitted to subpoena witnesses and in view of the liberal discovery ordered by the trial judge plus the fact that defendant has never contended or shown that he has any statutory right to a preliminary hearing, we cannot say that the trial judge erred in refusing to grant a second habeas corpus hearing.
 IV
The defendant alleges that the trial judge should have recused himself (1) because the trial judge had previously presided over a jury trial in which the defendant was convicted and this conviction was reversed on appeal, and (2) because the trial judge testified in the defendant's habeas corpus hearing.
At the habeas corpus hearing the trial judge merely testified that the defendant was the same person who had been convicted in 1974 for murder (on a guilty plea following the reversal of his conviction). The defendant's original conviction of murder in the second degree was reversed for the failure of the indictment to state the means, or quo modo, by which the crime was committed. Nelson v. State, 50 Ala. App. 285, 278 So.2d 734
(1973).
We find no basis for recusal. "A judge's participation in the trial of a defendant for another crime does not, without more, furnish a basis for his recusal." Messelt v. State,351 So.2d 640, 641 (Ala.Cr.App.), cert. denied, 351 So.2d 642 (Ala. 1977).
 V
The trial court properly overruled the defendant's several motions challenging the sufficiency of the State's evidence.
Linda Faye Vice was the State's key witness. She met the defendant in December of 1977 and she came with him from Anniston to Birmingham soon after Christmas. She knew that he had a pistol which he had apparently stolen from her uncle.
On December 31, 1977, they went to the Red Dog Saloon in Birmingham and met J.D. Cash, who invited them to a party. Both Ms. Vice and the defendant left the saloon with Mr. Cash and entered his cab.
Shortly after they were underway, the defendant told Cash to pull over, that he was going to get out. Cash stopped his cab and the defendant "pulled out the gun" and told Cash to give him his money. Cash handed the defendant a twenty dollar bill and told him that's all he had. Then the defendant
 "reached up for Mr. Cash's watch to grab it off his arm and when he did, Mr. Cash grabbed the barrel of the gun and he (the defendant) just started pulling the trigger."
Cash was shot once in the head and once in the chest. These wounds caused his death. The defendant and Ms. Vice got out of the cab and the defendant told her that if she "didn't get him a way out of Birmingham, that he would kill me, too". *Page 397 
On the night of January 2, 1978, Deputy Sheriff Dewey R. Gamble of Marion County, Tennessee, was patrolling Highway 41 between Jasper and the Hamilton County line. After observing a 1967 Chevrolet weaving over the road he stopped it and arrested the driver for driving while intoxicated. The defendant was sitting in the front passenger seat and, when asked, admitted that the car was his.
Deputy Gamble noticed that the defendant appeared to have something under his left leg. An inventory of the automobile produced a pistol from under the front seat. This pistol was later proven to be the weapon which killed Mr. Cash. Bloodstains on defendant's clothes at the time of his arrest were type "A" and consistent with the victim's blood type. Linda Sue Sparks, a rebuttal witness, observed Cash, the defendant and Ms. Vice leave the Red Dog Saloon together.
There was no evidence to indicate that Ms. Vice was an accomplice. The mere fact that a person witnesses a crime does not make him an accomplice. Davis v. State, 257 Ala. 447,59 So.2d 592 (1953). Except where the State's evidence undisputedly makes the witness an accomplice, the defendant has the burden of showing the witness's complicity. Jacks v. State,364 So.2d 397, 403 (Ala.Cr.App.), cert. denied, 364 So.2d 406
(Ala. 1978). Even the defendant admits in brief that "from her testimony, it is clear that the issue of robbery arose as an afterthought". Even if the issue of whether Ms. Vice was an accomplice was for the jury, still the trial judge properly denied the defendant's motion to exclude the State's evidence for insufficient corroboration. Flanagan v. State, 369 So.2d 46
(Ala.Cr.App. 1979).
 VI
The constitutionality of the "one-for-one" jury strike system has consistently been upheld. Williams v. State, 377 So.2d 634
(Ala.Cr.App. 1979).
 VII
The defendant alleges that the trial court erred by failing to define the elements of murder in its oral instructions to the jury.
After instructing the jury on the elements of robbery the trial judge stated:
 "(T)he burden is on the State to prove to you beyond a reasonable doubt and to a moral certainty, that while committing the robbery, the victim was intentionally killed. Now intention is a state of mind that the jury must determine from all the surrounding circumstances. It can be briefly defined as willfulness, without yielding to reason. That simply is intention. So, in order to convict this defendant with the crime for which he is charged, you must first determine whether there was a robbery committed and whether or not during the course of the commission of the robbery the victim was intentionally killed."
In Clements v. State, 370 So.2d 723, 725-726 (Ala. 1979), it was made clear that murder and intentional killing are not interchangeable and synonymous.
 "It seems to us to be abundantly clear that the express language of the Alabama Death Statute makes it a capital offense to rob or attempt to rob `when the victim is intentionally killed'. Thus, it is for the aggravated offense of robbery when the victim is intentionally killed, not murder under aggravated circumstances, that the death penalty may be imposed under Section 13-11-2 (a)(2)."
While a better definition of intentional should express some idea of a determination to act in a certain way or do a certain thing, of purpose and design, we do not think that the trial judge was in error in not charging the jury on intent as it related to murder.
 VIII
From the record it cannot be disputed that the vehicle in which the defendant was riding was stopped for a traffic offense. The driver was arrested for driving while intoxicated. The defendant was arrested for public drunkenness, "allowing a DWI to *Page 398 
operate a moving vehicle", and assaulting an officer. Deputy Gamble radioed for a wrecker to tow the car in and then inventoried the Chevrolet, finding a pistol and three spent rounds under the middle of the front seat.
An inventory search is one of the recognized exceptions to the warrant requirement rule. South Dakota v. Opperman,428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
Additionally, since the Chevrolet was stolen, the defendant lacked standing to object to the search. Lippold v. State,365 So.2d 1015, 1018 (Ala.Cr.App. 1978), cert. denied,365 So.2d 1022 (Ala. 1979).
 IX
On the same night that the defendant shot and killed Cash, he shot and killed a second man, Wilson W. Thompson, and seriously wounded Linda Vice.
At his trial no mention was made of the second murder and the assault. However, the defendant objected to any sentencing hearing being held prior to his trial on the second capital charge which was pending against him. It is contended that "any testimony by the defendant could have been used against him in the upcoming trial".
The trial court was particularly sensitive to the defendant's position and was careful to protect his rights by ruling that the State could not use anything from the sentencing hearing at the defendant's second trial.
 ". . . I'm instructing the District Attorney, I will not allow it to be used in the second case, which ends in 15. It is 78-01115. In other words, I want it clear, even though there is not a Motion in limine as to that particular point at that time in Case No. 78-01115, I'm ruling, in limine, that any matters brought about as the result of this bifurcated hearing are not to be used for impeachment purposes or any other purpose by the State in the second case."
* * * * * *
 "I'm considering the fact that this man is under indictment for another capital felony and, consequently, I am on the Court's own ruling in limine that any matters presented by the defendant, should he choose to testify in this bifurcated hearing, are not to be used in the second hearing."
* * * * * *
 "Well, evidently I didn't make myself clear. I am ruling that the State cannot use anything that is presented in this hearing for any purpose in the second trial."
* * * * * *
 "I am going to let David Larry Nelson testify, if he chooses to testify and anything he says will be sealed by this Court as far as the second trial is concerned."
We find no error in the refusal of the trial judge to delay the sentencing hearing.
 X
Alabama Code 1975, Section 13-11-4, requires that:
 "If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentencing hearing, which shall at least include the following:
 (1) One or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death; and
 (2) Any of the mitigating circumstances enumerated in section 13-11-7, which it finds insufficient to outweigh the aggravating circumstances."
For the sake of clarity we set forth the entire order of the court sentencing the defendant to death.
 "In accordance with law, the Court held a hearing on November 3, 1978, to determine whether or not the defendant would be sentenced to death in accordance with the verdict of the jury or be sentenced to life imprisonment without parole. *Page 399 
 "The defendant was present in open court with his attorneys, Honorable William Dawson and Honorable Fredrick Heffler. The State was represented by Assistant District Attorney Donald Russell.
 "Under Section 13-11-1 et seq. 1975 Code of Alabama this Court is under an obligation to make findings to determine mitigating and aggravating circumstances. The trial in this case was completed on October 11, 1978, with a jury verdict of guilty and punishment fixed at death. The testimony and evidence at trial is still fresh in the mind of the Court. The Court is cognizant of the exhibits and testimony offered and entered at trial.
 "The Court finds from all of the evidence and the jury verdict that the defendant is guilty of the intentional killing of James Dewey Cash while in the course of robbing the said James Dewey Cash. The Court further finds from the evidence introduced at the trial that this capital felony was especially heinous, atrocious and cruel. The evidence shows that the victim was shot in the head and again in the chest.
 "The Court further finds that this capital felony was committed while the defendant was engaged in the commission of a robbery. The Court further finds that during this hearing, the defendant was convicted of Murder in the Second Degree in 1974. The Court further finds that the defendant has a significant history of prior criminal activity; that the defendant does have the capacity to appreciate the criminality of his conduct; that the defendant's capacity to conform his conduct to the requirements of law was not substantially impaired; that there has actually been no evidence of domination by another party.
 "The Court further has afforded the defendant the opportunity to rebut any and all hearsay evidence introduced in this hearing. The Court has further afforded the defendant the opportunity to offer evidence of mitigating circumstances.
 "The Court finds that there are no mitigating circumstances.
 "The Court has considered all the circumstances in this case and finds the aggravating circumstances enumerated above to be present and finds no reason whatsoever to change the punishment as fixed by the jury at death."
Although the defendant has raised no objection to these findings, we cannot approve them. In cases in which the death penalty has been imposed, this Court must notice "any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court". Alabama Rules of Appellate Procedure, Rule 45A.
Initially, we note that the court's order does not contain a statement of "the findings of fact from the trial". We interpret this statutory dictate as requiring a statement of the facts upon which the trial judge bases his finding that the defendant is guilty of the acts charged in the indictment rather than merely a statement of the conclusions and allegations of the indictment itself. Mack v. State,375 So.2d 476 (Ala.Cr.App. 1978), affirmed, 375 So.2d 504 (Ala. 1979). Additionally, the trial court's order does not contain a finding of facts from the sentencing hearing.
The facts of the actual killing in this case do not warrant the finding that the "capital felony was especially heinous, atrocious and cruel". The aggravating circumstances found in Alabama Code 1975, Section 13-11-6 (8) do not apply to every intentional killing.
 "It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies — the conscienceless or pitiless crime which is unnecessarily torturous to the victim." Jacobs v. State, 361 So.2d at 633. *Page 400 
The fact that the defendant has a "significant history of prior criminal activity" cannot be considered as an aggravating circumstance unless the history fits the confines of §§ 13-11-6 (1) or (2).
 "(1) The capital felony was committed by a person under sentence of imprisonment;
 "(2) The defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person; . . ."
The statutory aggravating circumstances may not be added to or expanded. See Cook v. State, 369 So.2d 1243 (Ala.Cr.App. 1977), affirmed in part, reversed in part, 369 So.2d 1251, 1257 (Ala. 1978), on remand, 369 So.2d 1260 (Ala.Cr.App. 1979). However, the fact that there is a significant history of prior criminal activity may be considered by the trial judge in determining that the mitigating circumstance described in Section 13-11-7 (1) (no significant history of prior criminal activity) is not applicable. The trial judge in his order should make it clear that he is not considering as aggravating circumstances under Section 13-11-6 the lack of the mitigating circumstances described in Section 13-11-7.
The trial court also found as an aggravating circumstance the fact that "this capital felony was committed while the defendant was engaged in the commission of a robbery". Alabama Code 1975, Section 13-11-6 (4). This circumstance does not "aggravate" the crime with which the defendant was charged, i.e., intentional killing during the course of a robbery.
The word "aggravate" means "(t)o make worse; make worse of a burden; make more of a trouble". The American HeritageDictionary of the English Language (1969). See also State v.Rand, 132 Me. 246, 169 A. 898, 899 (1934).
 "To `aggravate' means to make heavy or heavier; to add to; to increase; also, to load; burden; to make worse or more severe; to render less tolerable or less excusable; to make more offensive; to enhance; intensify."
Judge Bookout has long espoused the view that the aggravating circumstance that the capital felony was committed in the course of a robbery is not applicable in a capital-robbery case.
 "To me, it is impermissible in a capital-robbery case to find as an aggravating circumstance that the capital felony was committed in the course of a robbery. Here, the basic crime charged is robbery, and the circumstance which elevates it to a capital felony is the intentional killing. To say that the crime of `robbery . . . when the victim is intentionally killed by the defendant' is aggravated by being committed in the course of a robbery is condemning the defendant twice for the same act — robbery or stealing money. "In my opinion the same rationale expressed in Cook v. State, Ala., 369 So.2d 1251 (1979), applies to the instant circumstance. There, the Alabama Supreme Court declared that `pecuniary gain' could not be used as an aggravating circumstance where the charge is capital robbery because the defendant would be condemned twice for the same act — stealing money. In other words, pecuniary gain is a circumstance of every robbery. Likewise, every capital robbery occurs during the commission or attempt to commit robbery. Since robbery or attempted robbery is an element of every capital robbery case, it could not logically be considered as an aggravating circumstance of the latter. The same reasoning is set out in my concurring opinion in Morrison v. State, Ala.Cr.App., 398 So.2d 730 (1979), and in Johnson v. State, Ala.Cr.App., 378 So.2d 1164 (1979). I likewise wrote to the same aggravating circumstance in a special concurrence in Thomas v. State, Ala.Cr.App., 373 So.2d 1149, 1160 (1979)."
 Specially concurring opinion in Bracewell v. State, Ala.Cr.App., 392 So.2d 1266 (1980).
Consequently, this cause must be remanded with instructions that the order of the trial court be written in accordance with the provisions of the opinion. Since two of the aggravating circumstances found by the trial judge are not applicable, the judge *Page 401 
must reconsider and reweigh the aggravating and mitigating circumstances.
For the reasons indicated, we affirm the conviction but remand the cause for proceedings in accordance with this opinion.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
All Judges concur.
[1] In this regard, the only mention in the record of anything that could be construed as a request is as follows:
 "Defense Counsel: I don't recall whether we were asked to waive it or what, but we stated that we wanted a hearing and we were not granted a hearing that we were told it was on the grand jury and so there would be no hearing."
Also, the defendant stated that he told the judge that he wanted a preliminary hearing. The record does not reveal when either request was made.