[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-14499

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 3, 2002
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-00925-CV-PT-S

DAVID LARRY NELSON,

Petitioner- Appellant,

versus

STATE OF ALABAMA,
ATTORNEY GENERAL FOR THE
STATE OF ALABAMA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 3, 2002)

Before ANDERSON, HULL and WILSON, Circuit Judges.

ANDERSON, Circuit Judge:

David Larry Nelson was convicted on March 1, 1979 of "murder committed

by a defendant who has been previously convicted of murder in the first or second

degree in the twenty years preceding the crime," under Ala. Code § 13-11-

2(a)(13)(1975). The trial court allowed Nelson to represent himself at his February

1996 re-sentencing hearing without first conducting a hearing to determine whether he understood the risks of self-representation, pursuant to <u>Faretta v. California</u>, 422 U.S. 806, 95 S. Ct. 2525 (1975). The only issue in this appeal is whether the absence of a <u>Faretta</u> hearing immediately prior to Nelson's 1996 sentencing hearing resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," under the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254 (2001). For the reasons discussed below, we affirm.

## I. FACTS

David Larry Nelson was convicted of killing James Dewey Cash and Wilson Thompson on the night of December 31, 1978. Only Nelson's death sentence for the killing of Thompson is at issue in this appeal.[1] He was indicted in separate indictments for the two killings, with the killing of Thompson being charged as murder after having been convicted of murder in the second degree within twenty years preceding that murder. Nelson was first tried for the murder of Cash and was

---

[1]The facts of this murder are recounted in the opinion of <u>Nelson v. State</u>, 511 So.2d 225, 228-31 (Ala.Crim.App. 1986).

convicted and sentenced to death.  See Nelson v. State, 405 So. 2d 392 (Ala.Crim.App. 1980).  In October 1978, Nelson was tried for the Thompson murder and convicted and sentenced to death.  Both convictions were reversed by the Alabama Court of Criminal Appeals and Alabama Supreme Court, pursuant to the United States Supreme Court's decision in Beck v. Alabama, 447 U.S. 625, 100 S. Ct. 2382 (1980).  See Nelson v. State, 405 So. 2d 50 (Ala.Crim.App. 1981); Nelson v. State, 405 So. 2d 401 (Ala. 1981).

Nelson was re-tried for the Cash murder and found guilty.  He was sentenced to life imprisonment.  This conviction is not at issue in this appeal. With respect to the Thompson homicide, which is at issue here, Nelson was also re-tried and found guilty of murder and sentenced to death.  The conviction was affirmed by the Alabama Court of Criminal Appeals and the Alabama Supreme Court.  Nelson v. State, 511 So. 2d 225 (Ala. Crim. App. 1986), aff'd, 511 So. 2d 248 (Ala. 1987).  The United States Supreme Court denied Nelson's petition for certiorari.  Nelson v. Alabama, 486 U.S. 1017, 108 S. Ct. 1755 (1988).

Nelson then filed a petition for relief from conviction and sentence of death under Temporary Rule 20 of the Alabama Rules of Criminal Procedure[2] in the

_____

[2]Renumbered Rule 32, Alabama Rules of Criminal Procedure effective January 1, 1991.

3

Circuit Court of Jefferson County. On December 1, 1987, Judge J. Richmond Pearson held a hearing pursuant to Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975), and found that Nelson could proceed pro se in the Rule 20 hearing and in future collateral proceedings. Judge Pearson denied Nelson's petition, and he and the State entered into an agreement whereby Nelson would forego direct appeal of the Rule 20 petition and instead petition the federal courts for a writ of habeas corpus under 22 U.S.C. § 2254. On December 12, 1990, Nelson filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Alabama. The court denied the petition with respect to Nelson's guilt, but granted it with respect to his death sentence. This Court affirmed. Nelson v. Nagle, 995 F.2d 1549, 1558 (11th Cir. 1993).

The new sentencing hearing was also conducted by Judge Pearson. Prior to the hearing, Nelson sent a letter on December 29, 1993 to Judge Pearson expressing his wish to represent himself at the re-sentencing hearing. The letter stated, "I would appreciate if your honor will allow me to represent myself at the proceedings. If it's necessary for me to have an attorney present at said proceedings, I would appreciate if your honor will appoint me an attorney to serve in the capacity as stand-by counsel only." Without conducting a new Faretta hearing, Judge Pearson allowed Nelson to proceed pro se and appointed two

lawyers to serve as standby counsel.

Nelson presented his case before a jury in the trial court from February 14-16, 1994. Standby counsel assisted Nelson periodically, but Nelson stated that he did not wish for them to assist him unless he asked. During his closing remarks, Nelson asked the judge and jury to sentence him to death. The jury returned a recommendation that Nelson receive the death penalty, and Judge Pearson sentenced Nelson to death.

Nelson then attempted to waive his appeals and have his case sent directly to the Alabama Supreme Court to set an execution date. Because of problems with the trial court's sentencing order not relevant to this case, the Alabama Court of Criminal Appeals twice remanded the case back to the trial court to enter a new sentencing order. Both the Alabama Court of Criminal Appeals and the Alabama Supreme Court then affirmed Nelson's sentence. Nelson did not file briefs in either case.[3]

On April 14, 1997, Nelson, proceeding through counsel, petitioned the United States District Court for the Northern District of Alabama for a writ of

---

[3]During these appellate proceedings relating to the re-sentencing, the Alabama Court of Criminal Appeals expressly addressed Nelson's self-representation. Nelson v. State, 681 So.2d 252, 255 n.6 (1995). The State makes no argument in this case that the Faretta issue is procedurally barred.

5

habeas corpus pursuant to 29 U.S.C. § 2254. The district court denied relief. On August 22, 2000, Nelson filed a Notice of Appeal. He subsequently filed for a Certificate of Appealability, and the district court granted his request with respect to the issue of whether it was error for the trial court to allow Nelson to proceed pro se at his 1994 re-sentencing hearing without first conducting a new Faretta hearing.

## II. DISCUSSION

### A. AEDPA and the Farett

Because Nelson filed his petition for habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), this case is governed by 28 U.S.C. § 2254(d), which provides, in relevant part:

> an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Nelson has alleged that the state courts violated federal law clearly established by the United States Supreme Court in Faretta v. California, 422 U.S. 806, 95 S. Ct.

6

2525 (1975). We conclude that the state courts application of the <u>Faretta</u> standard was not an unreasonable application of <u>Faretta</u>.

1. Clear and Unequivocal Assertion of the Right of Self-Representation

Before a court allows a criminal defendant to proceed pro se, the defendant must clearly and unequivocally assert his right of self-representation. <u>Faretta v. California</u>, 422 U.S. at 835, 95 S. Ct. at 2541. In this case, Nelson clearly asserted this right in his December 29, 1993 letter to the trial court. After being informed that he had been granted a re-sentencing hearing, Nelson wrote to the court:

> I expect as a formality, or matter of law I will have to be given a sentencing trial of some sort, since it's been ordered. If so, I would appreciate it if your honor will allow me to represent myself at the proceedings. If it's necessary for me to have an attorney present at said proceedings, I would appreciate if your honor will appoint me an attorney to serve in the capacity of stand-by council, only. Please advise me if I need to file a self-representation motion, or if this letter will be sufficient for me to represent myself in this matter.

Nelson has not challenged the district court's finding that he clearly and unequivocally asserted his right of self-representation. Consequently, the only issue for this Court is whether Nelson adequately understood the disadvantages and consequences of self-representation before choosing to proceed pro se.

2. Understanding the Disadvantages of Self-Representation

In <u>Faretta</u>, the Supreme Court held:

7

> Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

422 U.S. at 835, 95 S. Ct. at 2541. This Court has interpreted the Supreme Court's language to mean that ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding pro se and make an explicit finding that he has chosen to represent himself with adequate knowledge of the possible consequences. Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065 (11th Cir. 1986). The failure to do so, however, is not error as a matter of law. If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the Faretta standard will be satisfied. Id.

The same judge, Judge Pearson, who presided over the sentencing hearing at issue in this case also conducted a Faretta hearing in 1987 in a state habeas proceeding, and found that Nelson knowingly and intelligently asserted his right to self-representation. In the instant re-sentencing proceeding, Judge Pearson made an implicit finding that Nelson adequately understood the disadvantages and consequences of self-representation. At the beginning of the hearing and at several points thereafter, the judge advised Nelson that he was his own lawyer and could do anything that a lawyer could do. Immediately after Judge Pearson announced

8

his sentence, Nelson asked the judge if he would tell the two lawyers appointed as stand-by counsel that they could not do anything without Nelson's permission. Judge Pearson again assured Nelson that he was his own lawyer and referred expressly to the 1987 Faretta hearing. Judge Pearson responded: "I have told them that. That's my order back in 1987 when I declared you to be your own lawyer." In addition, several months later on September 27, 1994, Judge Pearson held a hearing and found that Nelson was competent to waive his appeals. Judge Pearson found:

> 1. That the appellant, David Larry Nelson, has participated in these proceedings for more than ten (10) years as a petition writer and oral movant.
>
> 2. That in appellant's oral recitations before this Court, as well as his written petitions to this Court, it is clearly exhibited that appellant is well versed in the substantive law as well as the procedural law of Alabama.
>
> 3. This Court in its memorandum opinion of December 1, 1987 found that the appellant, David Larry Nelson, intelligently and knowingly waived his right to counsel during future post convictions [sic] matters in this cause.
>
> 4. That the appellant appeared before this Court at this hearing and it is obvious from his pronouncement and demeanor that this appellant, David Larry Nelson, is fully aware of his actions and makes his decisions from an informed position.

Our careful review of the above described proceedings persuades us that Judge Pearson at least implicitly made a finding pursuant to the Faretta standard

9

that Nelson adequately understood the advantages and consequences of self-representation. Nelson had asserted his right of self-representation prior to the re-sentencing. At the beginning and during the sentencing, the judge clearly stated that Nelson was his own lawyer. Then, immediately after pronouncing sentence, the judge stated again that Nelson was his own lawyer and made express reference to the 1987 Faretta hearing. This express reference to the 1987 hearing makes it clear that the judge's finding was made pursuant to the Faretta standard; thus it is clear that the judge found that Nelson adequately understood the disadvantages and consequences of self-representation. Moreover, the judge's language makes it clear that this Faretta finding was the judge's meaning at the beginning of re-sentencing when the judge told Nelson, using the same terminology, that he was his own lawyer. And on September 27, 1994, Judge Pearson again made reference to his December 1, 1987, finding after a Faretta hearing that Nelson intelligently and knowingly waived his right to counsel. Significantly, in this September 27, 1994 finding, the judge explicitly articulates his understanding that the 1987 finding also applies to future proceedings.

Thus, we conclude that Judge Pearson made an appropriate Faretta finding. However, it is true that Judge Pearson did not hold a formal hearing in connection with the 1994 re-sentencing itself. Rather, he relied on the Faretta hearing that he

himself had conducted in December 1987, as well as on Nelson's oral and written presentations to the court contemporaneously and for the last ten years, and on Nelson's "pronouncement and demeanor" as preserved by Judge Pearson. The Supreme Court in Faretta did not set out any fixed time frame for the holding of the Faretta hearing it suggested, nor did it specify any particular procedures to ensure that a defendant's decision is knowing and intelligent and made with an awareness of the "dangers and disadvantages of self-representation." Faretta, 95 S.Ct. at 2541.

We readily conclude that Judge Pearson's decision, and the affirmance thereof by the Alabama Appellate Courts are not "contrary to" clearly established federal law as determined by the Supreme Court. We also conclude that Judge Pearson's decision, and that of the Alabama Appellate Courts, do not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court. In Fitzpatrick, while noting that ideally a court should hold a formal Faretta hearing, we held that the Faretta standard would be satisfied even in the absence of a hearing, if the record shows that a defendant knowingly and voluntarily elected to represent himself. Courts in such situations have considered the following factors (referred to herein as the Fitzpatrick factors):

> (1) the background, experience and conduct of the defendant
> including the age, educational background, and his physical and

11

mental health; (2) the extent to which the defendant had contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, the possible defenses, and the possible penalty; (4) the defendant's understanding of the rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which he aided the defendant; (7) whether the waiver of counsel was the result of mistreatment or coercion; or (8) whether the defendant was trying to manipulate the events of trial.

Strozier v. Newsom, 871 F.2d 995, 998 (11th Cir. 1998) (listing the Fitzpatrick factors). We discuss below what the record reveals about these factors and how they contribute to the totality of the circumstances and persuade us that the decision of the state courts was a reasonable application of Faretta. Before turning to this discussion, however, it is important to note the fact that in the instant case there are additional factors which add to the circumstances pointing to the conclusion that the decision of the state courts was reasonable. Principal amongst these is the fact that Judge Pearson himself had earlier conducted a Faretta hearing and had found that Nelson understood the disadvantages and consequences of self-representation.[4] Also significant is the fact that Judge Pearson contemporaneously observed Nelson's "oral recitations" and written petitions and his "pronouncement

_____

[4]We note that nelson did not challenge the adequacy of the 1987 Faretta hearing in the district court, nor did he do so in his initial brief on appeal. Although the 1987 Faretta hearing contributes to our conclusion that the challenged decision of the state courts was a reasonable application of Faretta, because of our disposition on the basis of the totality of circumstances, including the Fitzpatrick factors, we need not decide in this case whether a Faretta hearing held over six years earlier can be dispositive.

12

and demeanor" and concluded that Nelson was "fully aware of his actions and makes his decisions from an informed position."  In other words, it is clear that Judge Pearson observed no diminution in Nelson's understanding of relevant matters in the years since he conducted the <u>Faretta</u> hearing.  We now turn to a discussion of the <u>Fitzpatrick</u> factors and how they contribute to our analysis.

### a.  Experience in criminal trials

The factor that suggests most strongly that Nelson chose self-representation "with eyes open" is his extensive experience in previous criminal trials.  We note at the outset that the facts relevant of this factor also support several of the other <u>Fitzpatrick</u> factors in that they indicate defendant's extensive prior contact with lawyers; his knowledge of the nature of the charges,  possible defenses,  possible penalties;  and his understanding of the rules of procedure, evidence and courtroom decorum.  Prior to the sentencing hearing in question, Nelson had very recently experienced four capital murder trials and four capital sentencing hearings.  As noted above, shortly before Nelson's first trial for the instant offense, he was tried for the capital murder of Cash and was sentenced to death.  Following the first Cash trial, he was tried for the first time for the instant offense, the capital murder of Thompson.  Again, he experienced a capital sentencing proceeding and was

13

sentenced to death. Both of those convictions were overturned by the state courts, requiring new trials in both cases. Re-trials then were conducted in both cases, and capital sentencing proceedings were conducted. Nelson received a life sentence with respect to the murder of Cash, but again received the death sentence with respect to the instant murder of Thompson. Thus, by the time of the instant re-sentencing, Nelson had undergone two complete capital murder trials and two complete capital sentencing proceedings involving precisely the same issues which were facing him in the instant re-sentencing proceeding. In addition, he had undergone two complete capital murder trials with respect to Cash, which also involved very similar issues. Although Nelson was represented by counsel in all four of these preceding trials, the Alabama Court of Criminal Appeals found that Nelson had actively participated in his representation at his trials. Nelson v. Alabama, 511 So.2d 225, 238 (Ala. Crim. App. 1986). That court noted that Nelson had "participated in arguments before the court and the jury, cross-examined witnesses, made objections to evidence, and testified in his own behalf. Some of his arguments and objections to evidence disclose a marked understanding of the proceedings and considerable intelligence." Id. Indeed, Nelson himself testified at his 1987 Faretta hearing that "many of the lawyers that are appointed to represent clients have less experience than myself in the appeals and trial

14

process."[5]

This extensive experience in criminal trials was noted by Judge Pearson in his September 1994, finding that Nelson was competent to waive his appeals. There, the judge found that Nelson "has participated in these proceedings for more than ten (10) years as a petition writer and oral movant. . . . [and that] it is obvious from his pronouncement and demeanor that ... Nelson is fully aware of his actions and makes his decisions from an informed position."

Nelson also had considerable history of other crimes prior to this sentencing hearing, including proceedings involving another murder to which he pled guilty. Nelson's extensive experience with the criminal justice system, including his recent experience in four capital murder trials and sentencing proceedings and especially the two previous capital murder trials and sentencing proceedings with respect to the instant offense and necessarily involving identical issues, contribute significantly to the conclusion that the decision of the state courts challenged here was reasonable.

b. Contact with lawyers prior to the sentencing trial

---

[5]We hereby vacate our previous order denying Nelson's Motion to Supplement the Record with the transcript from Nelson's <u>Faretta</u> hearing and the December 1, 1987, Order. It is within the court's discretion to allow supplementation when it would be helpful to us. In addition, the State withdrew its opposition to the Motion to Supplement at oral argument. Thus, we now grant the motion to supplement.

In all four of his previous capital murder trials and sentencing hearings, Nelson was fully represented by counsel. Thus, Nelson had great exposure to lawyers prior to this sentencing hearing. Nelson stated as much at his 1987 Faretta hearing. At that hearing, the court questioned Nelson about how he formed his opinion about lawyers, to which he testified, "From my experience with them in the last few years. I went through several lawyers myself."

Nelson's repeated exposure to lawyers while they represented and advised him in virtually identical capital sentencing proceedings is in stark contrast to the Fitzpatrick defendant's exposure to lawyers, yet the Court in Fitzpatrick still found that this factor weighed in favor of a finding that the defendant knowingly and intelligently chose self-representation. 800 F.2d at 1066. The defendant in Fitzpatrick never even obtained counsel prior to the trial in which he represented himself, but the Court held that his contact with several different attorneys in attempting to retain counsel was "significant" and weighed in favor of finding a knowing waiver of his right to counsel. Id.

In this case, Nelson was represented throughout both his 1978 and 1982 trials, his direct appeals, and his first federal habeas proceedings. He dismissed his counsel prior to the re-sentencing hearing at issue here. It is clear that he had extensive contact with several different lawyers. In addition, the court appointed

16

standby lawyers for Nelson, so he could have had legal representation from a lawyer in the instant proceeding, if he had so desired.  Consequently, this factor strongly supports a finding that the state courts were reasonable in concluding that Nelson's waiver of counsel was knowing, voluntary, and intelligent.

           c.        Knowledge of the nature of the charges, possible defenses, and the possible penalty

In this case, Nelson represented himself in his capital sentencing hearing, rather than at his trial.  He had participated in four previous capital sentencing hearings, so he was previously exposed to the significance of mitigating circumstances.  A critical factor in the sentencing context is whether Nelson was aware of the possible penalty.  It is obvious that Nelson was aware that the death penalty was a possibility in this case.  The entire issue before the jury was whether Nelson should receive the death penalty.  Twice already, Nelson had been sentenced to death for this very crime.  As a result, no credible argument can be made that Nelson did not understand the nature of the charges against him and the possible penalty when he invoked his right to self-representation.  In addition, as noted above, Judge Pearson, the judge who presided over Nelson's re-sentencing hearing, later found that "it is clearly exhibited that appellant is well versed in the substantive law as well as the procedural law of Alabama."  Thus, this factor also contributes to the conclusion that the state courts reasonable found that Nelson

17

knowingly, intelligently, and voluntarily waived his right to counsel.

        d.        Understanding of the rules of procedure, evidence and courtroom decorum

The fact that Nelson had been the defendant in, and had counsel defending him in, four previous capital sentencing proceedings is a strong indication that Nelson understood the relevant rules of procedure and evidence and the appropriate courtroom decorum. This is also evidenced by several specific observations by the state courts. As noted previously, the Alabama Court of Criminal Appeals found that Nelson's participation in his court appearances displayed "a marked understanding of the proceedings and considerable intelligence." Nelson v. Alabama, 511 So. 2d 225, 238 (Ala. Crim. App. 1986). Judge Pearson in Nelson's 1987 Faretta hearing commented that, "I have no question about your ability. I am satisfied that as best as any layperson could be that you meet that standard." The trial court then when on to express to Nelson its concern that he was he was not familiar with some of the "finer points" of courtroom procedure. This is not required, however. This Court has held that a defendant need not possess the skills and knowledge of an attorney in order to be allowed to represent himself. Strozier, 871 F.2d at 1101.

In contrast to the claim that Nelson made in his 1987 Faretta hearing that, "[m]any of the lawyers that are appointed don't even have the experience in the

18

court room and pre-trial and post-conviction that I have had myself," Nelson now argues that he did not understand the distinction between the guilt and sentencing phases of his capital trial. He claims that this lack of understanding prevented him from properly introducing evidence of residual doubt as to his guilt, which the jury could have considered as a mitigating circumstance. Given Nelson's considerable experience with capital sentencing, it seems unlikely that he was unfamiliar with mitigating circumstances. Indeed, Nelson was able to bring out questions as to his guilt at the sentencing phase, thus introducing residual doubt, during his cross-examination of Linda Vice, the woman who was with him on the night of the December 31, 1977, murders.

On cross, Nelson asked Vice how much she had to drink "that night". She asked, "What night?" and Nelson replied, "The night you killed the old man." The court did not allow Nelson to question Vice in this manner, but did allow him some leeway to ask Vice if she had ever been a suspect in the murder. Nelson was able to suggest before the jury that Vice's testimony was motivated by a desire to exculpate herself. Thus, he both had an opportunity and did attempt to introduce evidence of residual doubt as a mitigating circumstance.

Nelson may have presented his case less artfully than a skilled lawyer might have, but that is not the standard under <u>Faretta</u>. 422 U.S. at 835, 95 S. Ct. at 2541.

19

Instead, the ultimate concern is whether Nelson knowingly, voluntarily, and intelligently chose self-representation "with eyes open." In light of the foregoing circumstances, this factor too points to a conclusion that the challenged decision by the state courts was a reasonable application of federal law.

> e. Whether standby counsel was appointed, and the extent to which they aided the defendant

Two attorneys were appointed as Nelson's standby counsel in this case. The court made clear that the lawyers were available to assist Nelson at any time during the sentencing hearing. Their assistance in the trial was limited by Nelson's own choice. Nelson twice stated that he would only use the standby counsel if he "lost his voice." He also stated that he had asked the lawyers not to advise him unless he asked. One of the lawyers did participate to some extent in the sentencing hearing, making motions for recusal and for individual voir dire and going on the record as advising Nelson not to bring out his other murder conviction. At a least one point during the trial, Nelson stated that he needed to confer with one of the lawyers, but the record does not reflect the substance of that conference. The fact that Nelson had two attorneys available to him and that their involvement was limited by Nelson himself further leads us to conclude that the challenged state court decision was reasonable.

> f. Age, education and health of defendant

20

Nelson was almost fifty years old at the time of the re-sentencing trial. He has a tenth grade education and completed his GED while in prison. The Alabama Court of Criminal Appeals found there were no reasonable grounds to question Nelson's mental competency either at the time of the commission of the crime or at his second trial. Nelson v. Alabama, 511 So. 2d at 238. The record indicates that Nelson has complained of depression while incarcerated on death row, but the psychologist's report states that Nelson is "unimpaired in his mentation and his ability to make decisions, and not suffering from any mental illness other than a situationally induced anxiety with slight dysphoria. . . . [H]is mental state is such that he is competent to make decisions and capable of attending to his own affairs." In addition, the record is clear that Nelson has had no major physical illnesses. All in all, we conclude that there is nothing in Nelson's educational or medical history that would undermine the reasonableness of the state court finding that Nelson knowingly, intelligently and voluntarily waived his right to self-representation.

> g.      Whether the waiver of counsel was the result of mistreatment or coercion

There is absolutely no evidence in the record to suggest that Nelson was mistreated or coerced into self-representation. To the contrary, Nelson actively sought to represent himself. The letter he wrote to the court asking to serve as his own counsel expressed dissatisfaction with his lawyers and a clear desire to

represent himself. Moreover, Nelson indicated at least three times during the re-sentencing trial that he did not wish standby counsel to participate. Consequently, this factor supports the reasonableness of the challenged state court decision.

> h. Whether the defendant was trying to manipulate the events of trial

Finally, there is some evidence that indicates that Nelson may have been trying to manipulate the sentencing proceedings in an effort to get a completely new trial rather than just a new sentencing hearing. On several occasions Nelson brought up the fact that he believed he should have been granted a new guilt phase of trial. Moreover, he actually asked the judge and jury to sentence him to death, and then changed his mind and filed a petition for a writ of habeas corpus. Although we cannot say there is a strong indication of manipulation by Nelson, this factor certainly does not favor his position.

## III. CONCLUSION

As the foregoing discussion of the Fitzpatrick factors demonstrates, the record in the instant case overwhelmingly supports the reasonableness of the decision of the state courts that Nelson understood the risks of self-representation, and knowingly, intelligently and voluntarily waived his right to counsel. In addition, in the instant case, the re-sentencing judge, Judge Pearson, actually held a Faretta hearing in late 1987 and made appropriate Faretta findings. Finally, the

22

record indicates that Judge Pearson observed no diminution in Nelson's understanding of the relevant matters over the years since the conduct of the Faretta hearing. On the basis of all these circumstances, we readily conclude that the decision of Judge Pearson, which is challenged here, and the affirmance by the Alabama appellate courts, are neither contrary to, nor involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, the judgment of the district court is

AFFIRMED.