[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10388
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2012
JOHN LEY
CLERK

Docket No. 1:09-cr-20110-ASG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ENRIQUE COLLAZO-JUBAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 23, 2012)

Before EDMONDSON, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Enrique Collazo-Juban appeals his conviction and 60-month, above-guidelines sentence for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). No reversible error has been shown; we affirm.

On appeal, Collazo-Juban challenges whether he waived his right to counsel knowingly and voluntarily. Whether a defendant has waived his right to appointed counsel knowingly, voluntarily, and intelligently is a mixed question of fact and law that we review de novo. United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002).

A criminal defendant has a constitutional right to represent himself at trial. Id. But before a defendant may waive his right to counsel, he "'should be made aware of the dangers and disadvantages of self representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" Id. (citing Faretta v. Cal., 95 S.Ct. 2525, 2541 (1975)). Although not required, the "ideal method" for the district court to ensure that a defendant understands the consequences of waiving the assistance of counsel is through a pre-trial hearing -- known as a Faretta inquiry -- during which the court informs the defendant of the charges against him, the possible punishments, basic trial procedures, and the hazards of self-representation. Id.

2

"[T]he ultimate test for whether there has been a valid waiver of the right to counsel 'is not the trial court's express advice, but rather the defendant's understanding.'" United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995). Thus, in determining whether the defendant's waiver is valid, we consider a variety of factors:

(1) the defendant's age, health, and education; (2) the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; (4) the defendant's understanding of the rules of evidence, procedure, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; (7) any mistreatment or coercion of the defendant; and (8) whether the defendant was attempting to manipulate the trial.

Kimball, 291 F.3d at 730-31.

Here, the district court conducted two Faretta hearings, after which the court concluded that Collazo-Juban's waiver of his right to counsel was "unequivocal, knowing[,] and intelligent." In its orders, the district court described the content

3

of its advice and warnings to Collazo-Juban during the Faretta hearings and its reasons for granting Collazo-Juban's request to represent himself. But, to determine whether Collazo-Juban understood the court's advice and warnings, we look at other factors.

In doing so, we conclude that the factors weigh in favor of the validity of Collazo-Juban's waiver. Collazo-Juban was 53 years old when he went to trial, and nothing evidences that he was in poor physical or mental health. Although he only completed the tenth grade, his three pro se letters to the court demonstrated his ability to read, to write, and to communicate effectively. Collazo-Juban also had extensive contact with his lawyer, Joaquin Mendez, before trial, including during three pre-trial hearings on his motions to suppress evidence. Upon granting Collazo-Juban's request to represent himself at trial, the district court appointed Mendez as standby counsel to assist Collazo-Juban during his trial and with his trial preparation. The record reflects that Mendez provided considerable assistance during the trial, helping Collazo-Juban with jury selection, the introduction of evidence, stipulations about his prior felony conviction, and the jury instructions.

That Collazo-Juban understood the nature of the charges against him and his possible defenses is also evidenced both by his pro se letters to the court and his

4

performance at trial. Collazo-Juban's <u>pro se</u> letters reflected his understanding that his federal charge stemmed from the same incident as did his state charge for illegal possession of a firearm. And at trial, Collazo-Juban told the jury during his opening statement that he had been charged with being a felon in possession of a firearm but that he never possessed the firearm; his cross-examination of witnesses focused on whether the witnesses in fact saw him in possession of a firearm; and his closing argument also addressed the issue of possession.[1] Moreover, based on his extensive criminal record -- including 11 convictions, 1 of which followed a jury trial -- we accept that Collazo-Juban understood basic trial procedures and had sufficient experience in criminal proceedings. See Nelson v. Alabama, 292 F.3d 1291, 1299 (11th Cir. 2002) (concluding that the defendant's earlier participation in criminal proceedings provided a "strong indication that [he] understood the relevant rules of procedure and evidence and the appropriate courtroom decorum").

In addition, nothing evidences that Collazo-Juban was coerced into defending himself or that his request was merely an attempt to manipulate the trial process. Instead, the district court -- suspecting that Collazo-Juban was only

---

[1]The district court's pertinent order indicated that the court informed Collazo-Juban that he faced up to ten years' imprisonment; nothing evidences that Collazo-Juban understood this information.

trying to delay his trial -- conducted two separate Faretta hearings, "urged" Collazo-Juban not to represent himself, and verified immediately before trial that Collazo-Juban still desired to do so. Considering all the circumstances, we agree with the district court's conclusion that Collazo-Juban's waiver was knowing, voluntary, and intelligent.

We next address Collazo-Juban's sentencing argument. He argues that the district court's above-guidelines sentence was substantively unreasonable given the facts of his case and the age of his prior convictions. We evaluate the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. Gall v. United States, 128 S.Ct. 586, 597 (2007). The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the section 3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). We will not reverse unless we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008).

We conclude that Collazo-Juban failed to satisfy his burden of proof. First, his 60-month sentence is well below the 10-year statutory maximum sentence for

his offense. See 18 U.S.C. § 924(a)(2); United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (concluding that the reasonableness of a sentence may also be indicated when the sentence imposed was well below the statutory maximum sentence).

According to the Presentence Investigation Report, Collazo-Juban has 11 prior convictions, 4 of which were for illegal possession of firearms. He also has a conviction for attempted first-degree murder based on a 1991 incident in which he shot his victim eight times after a verbal dispute. Although Collazo-Juban was sentenced to 22 years' imprisonment for that offense, he was released in 2003 and committed the instant offense in 2008.[2] Based on this record, we accept the district court's conclusion that an above-guidelines sentence was needed to promote respect for the law, to deter Collazo-Juban from further criminal activity, and to protect the public.

We are unconvinced that the facts of this case warrant a different result. Collazo-Juban attempted to flee from a security guard who had observed him trying to break into a truck. The guard followed Collazo-Juban; and, as the guard

---

[2]Because Collazo-Juban's prior convictions occurred more than 15 years before the instant offense, most of them did not result in criminal history points, pursuant to U.S.S.G. § 4A.2(e)(1). He did, however, receive 3 criminal history points for his attempted murder conviction because he had been incarcerated for that conviction within 15 years of the instant offense. Based on his offense level of 20 and criminal history category of II, Collazo-Juban's guidelines range was 37 to 46 months' imprisonment.

approached him, Collazo-Juban threatened the guard verbally. At that same moment, a backup guard arrived; and Collazo-Juban fled again. When the guards later caught Collazo-Juban, a gun fell out of his waistband. Although no one was injured during the commission of the offense, the facts of this case do not support Collazo-Juban's argument that the district court abused its discretion in imposing an above-guidelines sentence.

We also reject Collazo-Juban's argument that the staleness of his convictions renders them inappropriate for consideration under the section 3553(a) factors. Although Collazo-Juban suggests that the age of his convictions reflects his rehabilitation, we note that his hiatus from crime had more to do with his serving a prison sentence for attempted murder between 1991 and 2003 than it did his rehabilitation. In addition, that Collazo-Juban continued to possess a firearm after 4 prior convictions for illegal possession of a firearm and after serving more than 12 years in prison for attempted murder contradicts Collazo-Juban's rehabilitation theory and supports the district court's conclusion that the facts of this case warranted an above-guidelines sentence.

AFFIRMED.